ANNE V. GARDEN, executrix of FRANCIS R. GARDEN, dec'd.

*vs.*

JACOB DERRICKSON, et al.

*New Castle, Nov. Term of Superior Court, 1868.*

*Before the Chief Justice.*

A bond under seal, though voluntary, creates a debt, and is impeachable only for fraud.

Such a bond is enforceable against the grantor, and against all claiming under the grantor as volunteers.

I. G. executed and delivered to her son, F. R. G., a bond for $7,100. Afterward she made voluntary conveyance of her real estate to other children. After her death a judgment upon the bond was recovered against her administrator. *Held*, that in equity the real estate was bound by the judgment, irrespective of the question whether the bond for which it was recovered was voluntary or not.

BILL IN EQUITY, filed under the circumstances following :

Isabella Garden executed and delivered to Francis R. Garden, her son, her bond or obligation under seal, bearing date June 7th, 1858, for $7,100, payable in annual installments of $200 each, with interest; with a provision that at her decease the whole debt should be payable out of her estate. Francis R. Garden died about the year 1861, leaving a

will, of which the complainant was executrix. Isabella Garden died in November 1864, intestate; and administration of her estate was granted to the defendant, David P. Derrickson. Judgment in the Superior Court for New Castle County was recovered by the executrix of Francis R. Garden dec'd, against the administrator of Isabella Garden, dec'd, upon the bond to the amount of $8235,65 and costs; said judgment being No. 102 to May T. 1865. A *fieri facias* upon the judgment was issued and a levy made upon certain real estate of which Isabella Garden was seized in her lifetime and at the date of the bond. A portion of the real estate was sold and the net proceeds ($568,51) applied to the execution. Further proceedings at law under the execution were suspended in consequence of the fact that Isabella Garden had, in her lifetime, by sundry deeds conveyed away all her real estate, (being the real estate levied upon,) except the small parcel which was sold as before mentioned. A portion of the real estate was conveyed by deed, dated August 6th, 1862, to her daughter, Mary A. C. Derrickson, in consideration of natural affection and of one dollar: and the residue was conveyed by deed dated August 6th, 1862, for the consideration of one dollar, to Charles B. Lore and William C. Lodge, as trustees for William A. Garden, a son of Isabella Garden, during his lifetime and for his children in fee simple at his decease. William A. Garden has since deceased, and the trustees under the last mentioned deed have conveyed the premises therein described to his children, who are defendants herein.

The bill charged that Isabella Garden was, at the execution of the obligation before mentioned, indebted to Francis R. Garden in the sum therein mentioned; that the conveyances of her real estates were wholly voluntary and without any valuable consideration; and that, being made while the grantor therein was indebted to the complainant's testator, they were void as against such debt; that Isabella Garden had left no personal property or other real estate to satisfy

the debt. It, therefore, claimed that the real estate was held by the grantees subject to the judgment; and prayed a decree for an account of any personal estate of Isabella Garden dec'd, and that upon a deficiency of the same, the real estate should stand charged with the judgment, and a sale of the same be decreed and the judgment paid out of the proceeds.

The answer denied that Isabella Garden, at the time of the execution of the bond, was at all indebted to Francis R. Garden. It set forth a detailed state of facts tending to shew that Francis R. Garden was, at the date of the bond, wholly insolvent and could not have been a creditor of Isabella Garden; and it charged that the bond executed by her was wholly without consideration. The answer admitted that the two conveyances of Isabella Garden's real estate were without a valuable consideration; but it insisted that the conveyances of the real estate, though for the consideration of natural affection only, were valid except as against *bona fide* creditors for value of the grantor; and that complainant, being herself a volunteer, had no equity against the grantees of the real estate.

Depositions were taken on the part of the defendants tending to prove the insolvency of Francis R. Garden, at the date of the bond given to him by his mother and the improbability of her being indebted to him. On the part of the complainant letters of Isabella Garden were put in evidence addressed to Francis R. Garden's executrix, containing remittances on account of the bond—also a letter, under date of March 27th, 1860, containing a statement of her indebtedness on the bond and of payments she had made on account of it.

The case came before Hon. Edward W. Gilpin, Chief Justice, sitting as Chancellor,* at the Nov. T., of the Su-

---

*The case was transmitted from the Court of Chancery, to be heard by the Chief Justice under the Constitution, because the Chancellor was interested in the subject matter of the controversy.

perior Court, 1868, for a hearing upon the bill, answer, exhibits and depositions.

*T. F. Bayard,* for the complainants.

The bond of Isabella Garden is a perfect legal instrument, imposing upon her estate an ascertained legal obligation, for the payment of $7,100, with interest.   This is not denied; but the objection is that the bond being, as defendants claim, voluntary, cannot be enforced against the land conveyed to them in Mrs. Garden's lifetime.

To this we answer:

1. *The bond was not voluntary.*   In the first place, the seal imports a consideration.  The legal presumption thus raised is confirmed by Mrs. Garden's formal acknowledgment of the debt, in her letter of March 27th, 1860.  In addition to this is the effect of the judgment recovered against her administrator, which is conclusive of a consideration for the bond, and is an estoppel, binding not only the principal but also all privies in estate, such as these grantees are. 2 *Smith's Lead. Cas.* 572, 559.   The result is that the bond being a debt due and unpaid at the time these conveyances by the debtor were made, and the conveyances being voluntary, they are void as against this creditor under the statute of 13 Elizabeth; and a court of equity will hold the land charged, in the hands of the grantees, with the judgment under the statute which makes all a decedent's lands a fund for the payment of his debts.   *Rev. Code. Chap.* 110,*p.* 390; *Chap.* 90, *p.* 310.

2. But suppose the bond *was* voluntary.   In that case all the claimants are volunteers; and between equal equities the prior one will prevail.   *Prior in tempore potior in jure.* 1 *Shep. Touch,* 65.*n.*  Besides, the complainant has the power to enforce her judgment at law; and whoever, in addition to an equity, has the law on his side must prevail.  *Adams' Equity* 349, *n; Ellison vs. Ellison* 6. *Ves. Jr.* 656; *Fletcher*

*vs. Fletcher*, 4 *Hare* 67. 1 *Sto. Eq. Jur. Secs.* 105, 176, 433, *note*, 787, 793.

In this case the complainant holds, in the bond, a perfect legal security, which the law would enforce against Isabella Garden, the obligor, and equally so against all taking under her as volunteers. If necessary, a court of equity will aid in the enforcement of such a bond, as of any other legal security. It is not true that equity will in no case aid a volunteer. It will aid a volunteer having the prior right against volunteers. 1 *Fonb. Eq.* 274, *n.* 345, 6, 7; *Bouton vs. Bouton.* 1 *Atk. R.* 625 ; *Villiers vs. Beaumont.* 1 *Vern. R.* 100 ; *Allen vs. Arne, ib.* 365; *Beard vs. Nutall, ib.* 427 ; *Clavering vs. Clavering,* 1 *ib.* 473.

*Bradford and Higgins,* for the defendants.

It is not within the intent of the statute of 13 Elizabeth that a volunteer grantee of land should be held a trustee for a volunteer bondholder. Neither under the statute nor at common law can a trust be raised as between volunteers. A party seeking the aid of a court of equity must have a higher right than those whom he seeks to dispossess. In this view there is a broad distinction between creditors for value and persons claiming under a security given without a valuable consideration. The latter, as to third persons, are mere volunteers, whom equity will not aid, even against other volunteers having the legal right. No case can be found in which any but a creditor for value has been aided as against a volunteer. *Twyne's Case.* 1 *Smith's Lead. Cas.* 1; *Taylor vs. Jones.* 2 *Atk.* 600 ; 1 *Sto. Eq. Jur. Sec.* 433 ; 2 *ib.* 793, 706 ; *Colman vs. Sarel,* 3 *Bro. Ch. R.* 12; *Jefferys vs. Jefferys,* 1 *Cr. & Phil. R.* 138, 141; *Price vs. Price,* 8 *Eng. L. & E. R.* 271. *Holloway vs, Headington,* 8 *Simon's R.* 325.

Then is this a voluntary bond ? To ascertain whether it be so or not a court of equity will look behind the seal, and inquire into all the circumstances. The effect of the

seal is only to impose upon the defendants the *onus* of shew-
ing want of consideration. ʻThis they have done by the
proof that Francis R. Garden was utterly insolvent when
this bond was given, and could not have been her creditor.
1 *Am. Lead. Cas.* 48; *Kekewich vs. Manning*, 12 *Eng. Law
& Eq. R.* 126 ; *Hall vs. Palmer*, 3 *Hare R.* 532; *Ramsen vs.
Jackson*, 1 *Atk. R.* 294; *Lomas vs. Wright*, 2 *Myl. & Keene
R.* 776 ; *Clough vs. Lambert*, 10 *Simons R.* 178; *Garrard vs.
Lord Dinorben*, 5 *Hare R.* 213.

GILPIN, C. J.    Isabella Garden executed and delivered
to her son, Francis R. Garden, her bond or obligation, dated
June, 7th, 1858, for the payment of $7,100, with interest,
the payment of the principal being subject to some special
provisions not necessary to be stated.  Afterward, by two
deeds, she conveyed her real estate, in part to her daugh-
ter, Mary A. C. Derrickson in fee simple, and the residue
to trustees for the benefit of her son  William A. Garden
and his children.  These conveyances were wholly volun-
tary, being in consideration only of natural love and affec-
tion.  Since the death of Mrs. Garden a judgment has been
recovered on the bond against her administrator; and such
proceedings have been had as are necessary under the stat-
ute to make the judgment a lien upon real estate of the
decedent.  Had she remained seized of the real estate in
question until her death it would, without controversy, have
been subject to the judgment.  The question then is wheth-
er her conveyance of the real estate in her lifetime, with-
out any valuable consideration, defeated the judgment. It
is not disputed that had the bond on which the judgment
was recovered been an ordinary debt, contracted for a valu-
able consideration, the conveyance of the real estate would,
as against such debt be void; or rather the land would stand
charged, in the hands of the grantees, with its payment.
But it is insisted for the defendants that the bond itself
was voluntary and that a court of equity will not aid a
volunteer.

My view of the bond is this. It is a perfect legal instrument under seal; it is not a defective instrument, such as needs the aid of a court of equity to make it perfect. The aid required is the removal of an obstacle to its enforcement presented by the conveyances. The seal imports a consideration; by which is meant not merely that the seal is *prima facie* evidence of a consideration, but that it gives to the instrument, in the absence of fraud, the effect of a bond executed for a consideration. Whether it were given in fact for a consideration or not,it creates a perfect obligation, both at law and in equity, which is enforceable as a debt against the obligor and against all volunteers claiming under her. Such a bond can be impeached only on the ground of fraud.

I am of opinion, therefore, that the real estate remains in the hands of the grantees, charged with the judgment.

A decree was entered for the sale of the real estate and for the payment of the judgment out of the proceeds.