## M. MORRIS WHITEHURST *v.* JAMES E. BARNETT.

### [No. 20, October Term, 1931.]

*Decided January 12th, 1932.*

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*J. Leiper Winslow,* for the appellant.

*Nicholas H. Green,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

Charles Hollins was for many years the owner of a tract of land, containing eighty-eight acres, bordering on the south side of the Severn River, a few miles above Annapolis.

In February, 1916, he executed a renewal lease for two and one-tenth acres of said land unto James E. Barnett of Pittsburgh, Pa., for the term of ten years, which expired on the 15th day of January, 1926. Hollins, at other times prior to February, 1916, had leased other small parcels of said land to Barnett for a like term of years, which leases were never renewed.

In the early part of the year 1926, J. Leiper Winslow, ostensibly the agent of one Tom Tobin, a straw man, but the real agent of Dr. M. Morris Whitehurst, the appellant, learning that the property of Hollins on the Severn River was for sale, called upon Hollins relative thereto, and learned from him that the property could be bought for $25,000. In the course of the negotiations, Winslow was accompanied on one or more occasions to the home of Hollins by Dr. Whitehurst, and, while there, they were told by Hollins, as testified to by them, and not contradicted by Hollins, that there were about five acres of the property "under lease to Colonel Barnett, but that lease had only a few months to run." Thereafter, on the 6th day of March, the following agreement or contract of sale was executed:

"This Agreement made this 6th day of March 1926 by and between Charles Hollins party of the first part and J. Leiper Winslow Agent Tom Tobin party of the second part.

"Witnesseth that for and in consideration of the sum of twenty-five thousand ($25,000.00) Dollars cash net to the party of the 1st part said party 1st part hereby bargains and sells to said party of the second part, personal representatives 86 acres more or less in fee simple, part of which is leased to Col. Barnett (about 5 acres with 3 houses belonging to said Barnett) being situated on Lucy Creek running down to Severn River about 3 miles from Annapolis running along lines Allen Martin property and John G. Hol-

lins and Mr. Barnes properties also bordering Cadwell's property. Having reserved an acre for Hollins family grave yard & road to said grave yard on above property.

"Deposited herewith as a forfeit two hundred dollars to be deducted of $25,000, purchase price. Settlement on or before May 6th, 1926.

"Charles Hollins

"J. Leiper Winslow, Agent.

"Witness:

"Catherine S. Hollins."

Subsequent to the execution of the foregoing agreement or contract of sale, a lease was executed by Charles Hollins to James E. Barnett for the said two and one-tenth acres of land for another term of ten years, dated the 15th day of February, 1926. Thereafter a deed was executed on the 30th day of April, 1926, by Charles Hollins and Catherine Hollins, his wife, conveying unto Dr. Whitehurst in fee simple the land so purchased by him from Hollins; no mention being made therein of the lease dated February 15th, 1926, from Hollins to Barnett for the two and one-tenth acres of land. This lease to Barnett from Hollins was made without the knowledge and consent of Dr. Whitehurst, the purchaser of the property under the contract of sale of March 6th, 1926, though known to him at the time of the execution of the deed of April 30th, 1926.

On June 28th, 1926, the appellant filed his bill, in which he alleged the facts we have stated, with the further fact that the recording of the lease, dated February 15th, 1926, from Hollins to Barnett, was a cloud upon his title, seriously impairing and materially depreciating the value of his property, and that in effect it operated as a constructive fraud upon him. The bill concluded with the prayer that said lease from Charles Hollins to the defendant, James E. Barnett, be declared null and void.

On the 14th of August, 1926, an answer was filed to this bill, and on the 28th of January, 1927, no further proceedings having been taken by the plaintiff, the court, upon the

petition of the defendant, passed its order requiring the plaintiff to take further proceedings in the cause, or show cause to the contrary, on or before February 27th. As no further proceedings were taken by him within the time stated, and no cause to the contrary having been shown, the court by its order of January 27th, 1928, dismissed the bill, requiring the plaintiff to pay all costs.

On July 11th, 1928, the bill in this case was filed, the allegations therein being practically the same as those found in the earlier bill, which was dismissed. To this last bill, the defendant answered, denying for the most part the material allegations of the bill. Evidence was thereafter taken, upon which the court passed its order dismissing the bill. The appeal in this case is from that order.

It is contended by the appellee:

First. That the acceptance of the deed of April 30th, by which the property purchased was conveyed by Hollins and wife to Thomas Tobin, or the appellant, operated as an affirmance or ratification by Dr. Whitehurst of the act and conduct of Hollins in leasing the two and one-tenth acres of land to Barnett, after he had disposed of his interest in said land by the contract or agreement of sale of March 6th.

Second. That the dismissal of the earlier bill as above stated had the effect of depriving Dr. Whitehurst of any and all further right to obtain the relief here sought.

In determining the question first presented, it will be necessary to consider the acts and conduct of the parties to the lease, and the facts and circumstances connected with its execution, as well as the acts and conduct of Dr. Whitehurst in connection with the acceptance of the deed to him.

The lease, mentioned and referred to in the contract of sale of March 6th, refers to an existing lease to Colonel Barnett, and the property was sold subject to that lease and to no other. The lease, which is regarded by the appellant as a cloud upon his title, did not exist at that time, but was created after the sale and transfer of the property from Hollins to Whitehurst, and was, it seems, made without authority. There had been a lease between the parties executed more

than ten years before, which had expired on the 15th day of the preceding February. This lease did not provide for the right of renewal, and was at an end upon its expiration on February 15th, 1926. It is claimed, however, by James E. Barnett, that Hollins had verbally agreed to renew the former lease when it expired; but this he had not done.

It is evident both from the contract of sale and the evidence of Hollins that, at the time of the sale of the property, Hollins was of the impression that this former lease had not yet expired, but had a few months longer to run. On the night of, or the night following, the sale of the property, Hollins testified that he wrote Barnett that he had made the sale. His letter is not in the record, but the record contains Barnett's reply thereto of March 9th, within three days after the sale was made. In this letter he tells Hollins that he is glad that he had been successful in selling his property, and suggests that "as the purchaser understands that I have a lease, the only way now to secure me is for you to sign and send to me at once the lease I sent you some time ago. You see of course that I cannot go to the purchaser for a lease as he will at once say I do not have a lease." On the succeeding day, March 10th, Barnett again wrote Hollins: "If you have not already dated the lease you can make it February 15th, 1926, which is the expiration of the old one. The Notary Public's attestation of course will be the day it is made. The rental will be paid of course to the new owner."

On March 12th, two days after the last letter, Barnett again wrote Hollins, saying: "As the lease is mentioned in the agreement there is no reason why you cannot sign it as the title is still in you." Barnett again wrote Hollins on March 15th, in which he said: "I noted what you said about the other creek but it would be prohibitive in cost to take the cottage there, and I do not like that creek very well anyway." The letter of Hollins to which this letter was a reply is not in the record, but we may well infer from the above-quoted language of the reply that Hollins, not yet satisfied that he should do as requested, that is, execute a renewal of the lease, had suggested in his letter that Barnett could re-

move the cottage he had upon the property embraced in the former lease to a location on some other creek in that vicinity, but, as stated by Barnett in his letter, that location did not suit him so well, and the cost of the removal of the cottage would be prohibitive.

At the time of the execution of the contract of sale, the lease in the mind of Hollins was the one which expired on February 15th, 1926, though, at that time, he thought it had a few more months to run; and he never learned otherwise until after the sale of the property, when, it seems, upon the insistence of Barnett, the lease of March 15th was executed. Winslow, when told by Hollins that there was a lease held by Barnett on several acres of the land which had only a few more months to run, asked Hollins to let him see the lease. Hollins replied, "It is only a yearly lease from year to year," and said, "I don't know whether I have it here or not, but it is just an ordinary lease."

The execution of the lease on March 15th, 1926, when considered in connection with the acts of the parties and the facts and circumstances under which it was executed, was at least constructive fraud against Dr. Whitehurst, the purchaser of the property. "Constructive fraud, however, sometimes called 'legal fraud,' is, nevertheless, fraud, although it rests more upon presumption and less upon furtive intent, than moral fraud." *Cowee v. Cornell*, 75 N. Y. 91, 31 Am. Rep. 428.

As to the execution of the deed from Hollins to Winslow and its acceptance by the latter, Mr. Winslow testified that, when he learned of the lease of February 15th, 1926, he protested, "I told Mr. Hollins that my client intended to contest the lease to Colonel Barnett, and Mr. Hollins offered me a portion of the rental he had collected, and I refused to accept it at the time stating that the lease was made without our consent or knowledge, and that we did not believe it was valid. He executed the deed to my client then with the knowledge that we did not have anything to do with his lease or accept any part of the rental." This conversation was

had at the time of the execution of the deed, and, as stated by Mr. Winslow, "No mention was made of any renewal lease, or property being sold subject to a renewal of a lease," by "Mr. Hollins or anyone else"; nor was there any reservation or mention made in the deed then executed to the effect that the property was conveyed subject to that lease.

It is clear that, after the sale of the property under the contract of sale of March 6th, 1926, there was no power or authority in Hollins to lease unto Barnett any part of the land sold by him to Dr. Whitehurst, nor was the acceptance of the deed of April 30th an affirmance or ratification of the acts of the parties to the lease of March 15th, 1926, nor was it any bar to Dr. Whitehurst's right to proceed in equity to set aside, as a cloud upon his title, the lease wrongfully executed, as here attempted. *Robinson v. Marino,* 145 Md. 301, 125 A. 701.

The second question, whether the dismissal of the earlier bill for want of prosecution was a bar to Dr. Whitehurst's right to proceed under his second bill, is in our opinion fully answered by the case of *Royston v. Horner,* 75 Md. 557, 24 A. 25, 27. In that case, the court said, quoting from Judge Story: "An order of dismission is a bar only where the court has determined that the plaintiff had no title to the relief sought by his bill; and therefore an order dismissing a bill for want of prosecution is not a bar to another bill." And, quoting from 1 *Greenleaf, Evidence,* sec. 529, the court further said: "It is only where the point in issue is determined that the judgment is a bar." See, also, *Miller's Equity Procedure,* page 322, and the cases there cited. The case before us was dismissed, not upon the merits, but for want of further prosecution; and such dismissal was not a bar to a further bill.

From what we have said, the decree appealed from will be reversed, and the case remanded, that a decree in conformity with this opinion may be passed.

*Decree reversed with costs, and case remanded.*