ITALO-PETROLEUM CORPORATION OF AMERICA, a corporation of the State of Delaware, Defendant Below, Plaintiff in Error, *v.* MARTIN G. HANNIGAN, Plaintiff Below, Defendant in Error.

*(June* 18, 1940.)

LAYTON, C. J., RODNEY, SPEAKMAN and TERRY, J. J., sitting.

*Ivan Culbertson* for Plaintiff in Error.

*Stewart Lynch* for Defendant in Error.

Supreme Court, January Term, 1940.

LAYTON, C. J., delivering the opinion of the Court:

The first question for decision is whether the plaintiff, under the assignment of the notes sued on, was entitled to maintain the action in his own name; and, preliminarily it is to be said that the plaintiff is not an innocent holder for value; nor did the notes pass to him by endorsement under *Section* 31 of the *Negotiable Instruments Law* (*Sec.* 3155, *Rev. Code* 1935) for the reason that the assignments were not written on the instruments nor upon a paper attached thereto.

The court below, adopting the reasoning in the case of *Levy v. Levy*, 78 *Pa.* 507, 21 *Am. Rep.* 35, held that, as by the law of California, where the assignments were made, the plaintiff had acquired the legal title to the notes and the right to sue thereon in his own name, he became

entitled to the same right of action in this State. *Lanigan v. North*, 69 *Ark.* 62, 63 *S. W.* 62, is to the same effect, although in that case reference was made to a statute that, apparently, permitted the real party in interest to sue in his own name. In *Koechlin et Cie v. Kestenbaum Bros.*, 1 *K. B.* (1927) 889, a special statute, to some extent at least, influenced the decision. Other decisions, following *Levy v. Levy*, may, no doubt, be found. But, by the great weight of authority, the question whether suit on a chose in action shall be brought in the name of the assignor or assignee, is one relating to the remedy, and is to be determined by the law of the forum. 5 *C. J.* 981, 986; 6 *C. J. S., Assignments*, § 125, *p.* 1174; 4 *Am. Jur.* 323; 2 *Williston, Contracts*, 1936 *Ed.*, 1296; *Joseph Dixon Crucible Co. v. Paul*, (5 *Cir.*) 167 *F.* 784. In the leading case of *Pritchard v. Norton*, 106 *U. S.* 124, 1 *S. Ct.* 102, 27 *L. Ed.* 104, it was said that the question was the technical one of mere process. As expressed in *Foss v. Nutting, et al.*, 14 *Gray* (*Mass.*) 484, the question is not one of property, nor of the right of the assignee to recover the amounts due on the notes, but, simply, in whose name shall the suit be brought in the state of the forum.

The plaintiff's legal title to the notes and his right to sue for the recovery of such amounts as may be due thereon are freely acknowledged and accorded; but the right to maintain the action in his own name relates to the remedy, and is governed by the law of the forum. Comity does not demand the surrender of the public policy of the State. *White v. Govatos*, 1 *Terry* (40 *Del.*) 349, 10 *A.* 2d 524.

It was further held that the plaintiff was entitled to sue in his own name under the provisions of *Chapter* 228, *Volume* 30, *Delaware Laws*, incorporated in the *Code of* 1935 as *Section* 4684. The defendant earnestly insists that an assignee of a bond or specialty for the payment of money may not sue in his own name unless the assign-

ment is under seal and before a credible witness as provided by *Section* 3107 of the Code. But it seems not to have been noticed either at the trial, or at the argument on the motion for a new trial, that the requirements of *Section* 3107 were, in fact, observed. The assignments were under seal, and were formally acknowledged before a notary public. The mere signature of a witness on the instrument of assignment would be sufficient to show, prima facie, that the assignment was made before him; and where the assignment is under seal, and the signature of the assignor has been authenticated before a notary public, the purposes of the statute have been accomplished. In such case it may properly be said that the assignment was before a credible witness. 1 *Am. Jur.* 325; 1 *C. J.* 787; 1 *C. J. S., Acknowledgments,* § 32 *et seq., p.* 812; *Com'rs of United States Deposit Fund Co. v. Chase,* 6 *Barb.* (*N. Y.*) 37; *Blair v. Campbell,* 45 *S. W.* 93, 19 *Ky. Law Rep.* 2012; *Maddox v. Wood,* 151 *Ala.* 157, 43 *So.* 968; *First Nat. Bank of Hailey v. Glenn,* 10 *Idaho* 224, 77 *P.* 623, 109 *Am. St. Rep.* 204.

■ In the instant case it is not necessary to consider the effect of the provisions of the later statute on the earlier one. The question is, largely, academic; for if the requirements of *Section* 3107 have, in fact, been met, the assignment was "in accordance with a Statute," and, therefore, the plaintiff, as assignee, under either statute was entitled to bring the suit in his own name.

The second question is whether there was sufficient proof of authority for the execution of the notes sued on to entitle them to be admitted in evidence, having regard for the affidavit denying signature filed by the defendant, and the plea of *non est factum.*

■■ *Section* 4649 of the Code provides that in any action brought upon any deed, bond, bill, note or other instrument in writing, a copy of which shall have been filed

with the declaration, the defendant, not being an executor or administrator, shall not, at the trial, be allowed to deny his signature, and the execution of such instrument shall be taken to be admitted, unless the defendant shall have filed an affidavit denying the signature at the time of filing his plea. The language of the statute, while more appropriate to the case of an individual defendant than to a defendant corporation, undoubtedly embraces corporation. A corporate seal is not the same thing as a signature, nor is it equivalent to a signature. 6 *Fletcher, Cyc. Corp., Perm. Ed.*, § 2471. But the seal forms a part of the formality of execution; and where an affidavit is filed on behalf of a defendant corporation denying its signature, the execution of the instrument is not admitted, and the plaintiff is put to formal proof of execution.

■ ■ The plaintiff proved the identity and signatures of the president and assistant secretary, and proved the corporate seal. In *Conine v. J. & B. R. R. Co.*, 3 *Houst.* 288, 89 *Am. Dec.* 230, the former Court of Errors and Appeals laid down the rule thus:

"When the common seal of a corporation appears to be affixed to an instrument and the signature of a proper officer is proved or admitted, the Court is bound to presume that the officer did not exceed his authority, and the seal itself is prima facie evidence that it was affixed by proper authority; and the burden of showing that it is wrongfully there rests upon the party objecting to it."

Stated otherwise, it is implied from the seal that the corporation, through its directors or those empowered to conduct the corporate business, authorized the president, secretary or other official acting in the particular case to make the contract evidenced by the instrument on which the seal is placed; and the instrument thus sealed, in the absence of opposing proof, is to be regarded as the binding act and deed of the corporation. 6 *Fletcher*, § 2471. This evidence is merely presumptive. It is not conclusive of the assent and act of the corporation. The presumption of due

execution raised by the corporate seal may always be overcome. But, in the ordinary case, on such proof, the instrument is admissible in evidence, and, presumptively, binds the corporation.

The defendant, however, contends that the question whether its president had authority to bind the corporation by executing the notes should have been left to the jury. This is, of course, true if evidence to overcome the presumption was, in fact, introduced. In this respect the record is somewhat confusing. It is not clear whether the defendant was in a position to show that its officers acted without authority, but was prevented by a preliminary adverse ruling of the court. However that may be, it is entirely clear that the court found express authority for the acts of the corporation's officers in *Section 1 of Article 7* of the by-laws. "The question before me," said the court, "being the construction of Article Seven of the by-laws of the corporation, was clearly a legal one which should never be left to the jury."

Properly construed, the by-law may not be regarded as a grant of power. It is unreasonable to suppose that it was intended to lodge the power to bind the corporation by notes and acceptances indiscriminately in the president, vice-president and manager. Reasonably interpreted, the by-law merely designates the officer who may perform the ministerial act necessary to carry into execution the order of the board of directors. Clearly, the authority relates to the formalities of execution.

The defendant, on the other hand, contends that *Sections 2 and 4 of Article 3* of the by-laws relating, respectively, to the powers and duties of the president and secretary, clearly show that these officers had no power to bind the corporation by the execution of the notes in the absence of express authority from the board of directors.

This contention is not acceptable. The word "authorized" appearing in each of the sections of the by-laws referred to, does not have the restricted meaning of authority expressly conferred. Implied authority is, nevertheless, authority. Apparent authority is authority, if it be shown that the board of directors has knowingly permitted the officers of the corporation to exercise authority in the particular matters, or has held them out as possessing authority. See *Greenspon's Sons Iron & Steel Co. v. Pecos Valley Gas Co.*, 4 *W. W. Harr.* (34 *Del.*) 567, 156 *A.* 350. However arising, authority is power. The sections of the by-laws, relied on by the defendant as being restrictive in nature, do no more than designate the officers who shall attend to the formalities of execution if authority to act in the particular matter has proceeded, either expressly or by implication, from the board of directors.

The direction of a verdict for the plaintiff for the reason that under *Section* 1 *of Article* 7 of the by-laws, the president was expressly authorized to bind the corporation by executing the notes sued on was error; and as a retrial of the cause will be ordered, it has seemed advisable to express an opinion with respect to questions that may arise.

The strict rule that the president of a private corporation has little or no authority to bind the corporation by virtue of his office is slowly but certainly giving place to the more reasonable and practical view that he is presumed to have, by virtue of his office, certain more or less limited powers in the transaction of the usual and ordinary business of the corporation. See *Atlantic Refining Co. v. Ingalls & Co. Inc.*, 7 *W. W. Harr.* (37 *Del.*) 503, 185 *A.* 885.

It is not unreasonable to presume that the president has the authority to bind the corporation by executing and

transferring negotiable paper to pay the debts of the corporation; and the more reasonable view, proceeding from realistic considerations, is that presumption should be indulged that the president has the authority to bind the corporation by the execution and transfer of negotiable paper in the ordinary course of the corporation's business. 2 *Fletcher, supra,* § 599. The power to bind the principal by making, accepting or endorsing negotiable paper is, of course, an important power, susceptible to abuse, and dangerous in its consequences to corporations; but there seems to be no sufficient reason to conclude that corporations will suffer such consequences by recognizing presumptive authority in the president to bind the corporation by the execution and transfer of negotiable paper in the ordinary course of its business. A defendant corporation is in a better position, perhaps, than the plaintiff to show want of express authority for the act of its president, or that his authority was definitely restricted. It is in an equally favorable position with the plaintiff to show that no implied power existed, or no apparent authority arising out of a course of conduct. The opportunity is open for it to show that the transaction was unusual or extraordinary; that it was not in the ordinary course of its business; that the president was serving his own interests; that the plaintiff had knowledge of want of authority; or other facts and circumstances sufficient to overcome the presumption. And, where a plaintiff in an action against a corporation on promissory notes, purporting to have been executed by its authority, relies on the presumption of authority arising from the presence of the corporate seal on the instrument sued on, or on the presumptive authority of the president to execute or transfer the instrument, the character of the transaction, the course of conduct on the part of the president, or other officer executing the instrument, and the corporation with respect to like matters, ratification or acceptance of benefits by the corporation, or other facts in

the nature of an estoppel sufficient to overcome the defense of want of authority, are all proper subjects of inquiry. A reasonable latitude should be permitted in the development of the evidence on behalf of either party.

The court below ruled that, as the notes sued on were under seal, want of consideration could not be shown as a defense. In its opinion denying the motion for a new trial, *Stayton v. Morris,* 4 *Harr.* 357, and *Messick v. Stafford,* 2 *Houst.* 243, were cited. These cases were decided many years before the enactment of the *Negotiable Instruments Law.* In the brief of counsel for the plaintiff, *Kennedy v. Collins,* 7 *Boyce* 426, 108 *A.* 48, a case arising after the enactment of the *Uniform Law,* is cited. But this is to be said with respect to that case: the ruling of the court, that the consideration of the sealed note could not be attacked, arose during the trial on an offer of evidence; the *Negotiable Instruments Law* was not mentioned; and no authorities were cited. It may also be said that an inspection of the sealed note then under consideration reveals the fact that it was not negotiable under paragraph (2), *Section* 5 *of the Uniform Act.*

The plaintiff also cites and relies on *Balliet v. Fetter,* 314 *Pa.* 284, 171 *A.* 466, and *Re Conrad's Estate,* 333 *Pa.* 561, 3 *A.2d* 697. In these cases, *Section* 28 *of the Negotiable Instruments Law,* 56 *P. S.,* § 65, was before the court. It was held that the defense of want of consideration was not available in an action on a sealed instrument, in the absence of fraud, and that this is true even in the case of sealed negotiable instruments. The position of the Pennsylvania court appears to be that the Legislature did not intend, by the enactment of the Uniform Law, to sweep aside the principle, enunciated in a long line of cases, that agreements under seal were not subject to the defense of want of consideration.

By *Section* 6 *of the Act, Rev. Code* 1935, § 3130, the negotiable quality of an instrument is not affected by the fact that it bears a seal. By *Section* 24, *Rev. Code* 1935, § 3148, every negotiable instrument is deemed prima facie to have been issued for valuable consideration. By *Section* 28, *Rev. Code* 1935, § 3152, absence or failure of consideration, in whole or in part, is made a matter of defense as against any person not a holder in due course. Passing by the question whether the commercial paper of a corporation, negotiable in form, does not lose the quality of negotiability by having attached thereto the corporate seal, see *Chase National Bank v. Faurot,* 149 *N. Y.* 532, 44 *N. E.* 164, 35 *L. R. A.* 605, the Legislature, we think, has expressed clearly its purpose to abolish the conclusive presumption of consideration for a sealed instrument which is otherwise negotiable, and to substitute a rebuttable presumption that all negotiable instruments, sealed or unsealed, have been issued for a valuable consideration. It follows from the broad and general terms of the law that the defense of want of consideration is applicable as well to sealed as to unsealed negotiable instruments. It is not for the court to introduce an exception. See *Federal United Corporation v. Havender et al.,* 23 *Del. Ch.* —, 11 *A.* 2*d* 331. Authority for this view is not wanting. *Brannan, Negotiable Instruments, 5th Ed.,* 158; *Citizens' National Bank v. Custis,* 153 *Md.* 235, 138 *A.* 261, 53 *A. L. R.* 1165; *Citizens' Bank of Blakely v. Hall,* 179 *Ga.* 662, 177 *S. E.* 496, 97 *A. L. R.* 613; *Patterson v. Fuller,* 203 *N. C.* 788, 167 *S. E.* 74.

The eleventh plea was not objected to either as to form or substance. Want of consideration was alleged. There was error in the ruling that the substance of the plea could not be stated to the jury; and that want of consideration for the notes could not be shown in defense.

Something more needs to be said with respect to the matter of the eleventh plea. It is a general rule that

the consideration of an instrument, even if under seal, may be questioned if fraud is alleged. *In Garden, Ex'r, v. Derrickson,* 2 *Del. Ch.* 386, 95 *Am. Dec.* 286, cited by the plaintiff, Chief Justice Gilpin said:

"The seal imports a consideration; by which is meant not merely that the seal is prima facie evidence of a consideration, but that it gives to the instrument, in the absence of fraud, the effect of a bond executed for a consideration."

See, also, *In re Conrad's Estate, supra.* The plea alleges that the members of the syndicate were in control of the corporation and of its board of directors in that thirteen members of the syndicate comprised a majority of the board; that the president of the corporation and the chairman of the board were members of the syndicate; that the board of directors, dominated and controlled by members of the syndicate, caused the notes sued on to be issued to the syndicate manager; that the notes were given by officers and directors of the corporation to the syndicate of which they were members and in which they were financially interested and representing themselves as individuals in the transaction; and that notes were issued without any legal consideration therefor.

Fraud is actual or constructive. Constructive fraud is a breach of legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. 26 *C. J.* 1061. It is a term applied to a great variety of transactions which equity regards as wrongful, to which it attributes the same or similar effects which follow from actual fraud, and for which it gives the same relief as that granted in cases of actual fraud. *Pomeroy Eq. Jur., 4th Ed.,* § 992. While called constructive fraud, it is nevertheless fraud. *Tobin et al. v. Barnett,* 161 *Md.* 444, 157 *A.* 737.

Public policy demands of directors an un-

·divided loyalty to the corporation to the end that there shall be no conflict between duty and self-interest. *Guth v. Loft, Inc.,* 23 *Del. Ch.* —, 5 *A.* 2*d* 503. The votes of interested directors cannot be counted to make up a majority of the board. 3 *Fletcher Corp.,* § 936 *et seq.; Keenan v. Eshleman,* 22 *Del. Ch.* —, 2 *A.* 2*d* 904, 120 *A. L. R.* 227; *Cahall v. Lofland,* 12 *Del. Ch.* 299, 144 *A.* 224. If a majority of the directors are adversely interested, any transaction between themselves and the corporation as represented by its board is a case of officers dealing with themselves. 3 *Fletcher, Corp.,* § 937.

The plea is not founded alone on a presumption of fraud arising from a fiduciary relation with respect to which moral guilt is not necessarily an incident. If the facts and circumstances alleged are true, the corporation has been the victim of specific and unmitigable wrongdoing properly cognizable in a criminal court.

Irrespective of the eleventh plea, there is eminent authority to the effect that fraud in the execution of specialties may be proved under the general issue. 1 *Chitty Pl.* 483; *Gould Pl.* 497; 18 *C. J.* 19; *Van Valkenburgh v. Rouk,* 12 *Johns.* (*N. Y.*) 337; *Dorr v. Munsell,* 13 *Johns.* (*N. Y.*) 430. If the facts alleged shall be proved, the instruments sued on were not the acts and deeds of the corporation. They were not merely voidable. They were void. It follows that all pertinent evidence of the relationships of members of the board of directors to the syndicate, the composition of the syndicate, and in connection with this evidence, matters relating to the consideration given for the notes, or the absence of consideration, were admissible as well under the plea of *non est factum* as under the special plea.

The trial court struck out all evidence with respect to the issue of champerty on the ground that no rela-

tion between one Byers who was alleged to have been a party[2] to the champertous agreement and the plaintiff, Hannigan, had been proved. The Superior Court, in *Hannigan v. Italo Petroleum Corporation*, 6 *W. W. Harr.* (36 *Del.*) 442, 178 *A.* 589, and in the same case, in 7 *W. W. Harr.* (37 *Del.*) 180, 181 *A.* 4, fully considered the law relating to champertous agreements. Nothing need be added. It was necessary for the defendant to prove that Hannigan was either a party to the champertous agreement of Byers, or that he was the agent of Byers and acting for him. The proof utterly failed. The court's ruling in this respect was correct.

The court below erred in directing a verdict in favor of the plaintiff. The judgment is reversed, with a *venire de novo*.