THE MARTIN FOUNDATION, INC., a corporation of the State of New York, LESTER MARTIN & CO., INC., a corporation of the State of New York, SAMUEL MARTIN, a citizen of the State of New York, and LESTER MARTIN, a citizen of the State of New York, as Attorney in fact for ALANA JUNE MARTIN and JANE LEE MARTIN,

Plaintiffs,

CHARLES H. MEYER, WILLIAM I. SPIEGELBERG and MARJORIE B. FRANK, Trustees under two certain Indentures of Trust, LOLA STEINHARDT and RALPH BRANDON,

Intervening Plaintiffs,

*vs.*

NORTH AMERICAN RAYON CORPORATION, a corporation of the State of Delaware, and BEAUNIT MILLS, INC., a corporation of the State of New York,

Defendants.

*New Castle, August 29, 1949.*

*Daniel O. Hastings,* of the firm of Hastings, Stockly, Walz & Wise, (*William Gellin,* of New York City, of counsel), for plaintiffs.

*Clair J. Killoran,* of the firm of Killoran & Van Brunt, for intervening plaintiffs.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, (*Theodore Kiendl, S. Hazard Gillespie, Jr.,* and *Cleveland C. Cory,* of the firm of Davis, Polk, Wardwell, Sunderland & Kiendl, of New York City, of counsel), for defendants.

SEITZ, Vice Chancellor: Plaintiffs attack—now at the preliminary injunction stage—the legality of a corporate resolution which, subject to stockholder approval, sells all of the corporate assets to another corporation. The stockholders' meeting to vote on the proposed sale has been postponed pending a determination of the present application.

Plaintiffs are substantial stockholders of the defendant North American Rayon Corporation (hereinafter called "Rayon"), a Delaware corporation. The directors of Rayon acting pursuant to *Section* 65 of the *General Corporation Law of Delaware, Rev.Code* 1935, § 2097, have passed a resolution selling Rayon's assets to the defendant Beaunit Mills, Inc. (hereinafter called "Beaunit"), a New York corporation. Under the plan, Rayon is to receive a certain amount of Beaunit's newly created preferred stock for its assets.

Plaintiffs attack the action on two grounds: (1) In view of the limitation imposed by paragraph 12 of Rayon's certificate of incorporation, the 8 directors of Rayon who voted in favor of the resolution selling Rayon's assets to Beaunit had such an "interest" in Beaunit that they were not entitled to be counted for quorum purposes. Consequently, there was no valid quorum present when the resolution was passed. (2) Because Beaunit owns a majority of the voting stock of Rayon, these defendant corporations have the burden of demonstrating the entire fairness of the proposed

transaction to all of the stockholders of Rayon and this they have not done.

This is the decision on plaintiffs' application for a preliminary injunction.

Let us consider whether the directors' resolution was rendered invalid by virtue of the provisions of paragraph 12 of Rayon's certificate of incorporation. Paragraph 12 of Rayon's certificate provides:

"In the absence of fraud, no contract or other transaction between the Corporation and any other corporation or any individual or firm shall be in any way affected or invalidated by the fact that any of the directors of the Corporation is interested in such other corporation or firm or personally interested in such other contract or transaction; provided that such interest shall be fully disclosed or otherwise known to the Board of Directors or Executive Committee at the meeting at which such contract or transaction is authorized or confirmed; and provided further that at such meeting there is present a quorum of Directors not so interested and that such contract or transaction shall be approved by a majority of such quorum. Any Director of the Corporation may vote upon any contract or other transaction between this Corporation and any subsidiary or affiliated corporation without regard to the fact that he is also a director of such subsidiary or affiliated corporation."

Rayon's board of directors consisted of 10 members, eight of whom voted in favor of the resolution dealing with the sale of its assets, while two voted against it. Rayon's by-laws provide that one-third of the directors—being four directors—shall constitute a quorum. At least a majority of the quorum must have approved the corporate action here attacked. It is apparent, therefore, that unless at least three of the eight directors who voted in favor of the resolution were entitled so to do, the resolution was not validly adopted.

Five of the eight directors who voted in favor of the resolution submitting for stockholder approval the sale of Rayon's assets to Beaunit were also directors of Beaunit. Six of the same eight directors were stockholders of Beaunit. One of these was also employed as a consultant by Beaunit, while another was an officer of a subsidiary of Beaunit.

It is quite obvious that in a sense each of the eight directors of Rayon mentioned was "interested" in Beaunit. But defendants say that the interests mentioned are not of the type encompassed within the common law rule which prevents interested directors from being counted for quorum purposes.[1] Let us assume this is so. That does not resolve the problem because of the language of paragraph 12 of the certificate which says that "no contract or other transaction between the Corporation and any other corporation or any individual or firm shall be in any way affected or invalidated by the fact that any of the *directors of the Corporation is interested in such other corporation or firm* or personally interested in such other contract or transaction; * * *." The italicized quoted language when contrasted with the language immediately following and referring to directors personally interested would appear to indicate that "interested in such other corporation or firm" was intended to be broader (or different) than the personal interest also referred to in paragraph 12. Consequently, it is also broader (or different) than the interests which defendants say are covered by the common law quorum rule. In other words, the language of the certificate defines "interest" more broadly (or differently) than personal interest. When we come to decide what interest other than a personal interest a director of Rayon could have in Beaunit, we must certainly include any substantial stockholder interest since that is one of the most common and likely interests. I am obviously assuming, in accordance with defendants' contention, that stockholder interest is not a disqualifying interest under the common law quorum rule. The inclusion of stock ownership as an interest covered by paragraph 12 is even more justified here because the last sentence excludes the possibility that the terminology refers to at least one other possible substantial

---

[1] See *Keenan v. Eshleman*, 23 *Del. Ch.* 234, 2 *A. 2d*, 904, 120 *A. L. R.* 227; *Cahall v. Lofland*, 12 *Del. Ch.* 299, 114 *A.* 224; *Italo-Petroleum Corporation of America v. Hannigan*, 1 *Terry* 534, 14 *A. 2d* 401, and see *Blish v. Thompson Automatic Arms Corp.*, 30 *Del. Ch.* 538, 64 *A. 2d* 581.

interest, viz., dual director interest involving a subsidiary or an affiliate.

When the contrast in the terms employed in paragraph 12 is considered, I think it fair to construe the italicized quoted language of Rayon's certificate as encompassing director interest of the type here existing with respect to stock ownership in Beaunit.[2]  This conclusion is fortified by a consideration of the last sentence of paragraph 12. That sentence permits a director of Rayon to vote on a contract or transaction with any subsidiary or affiliated corporation, even though such director is also a director of the affiliated or subsidiary corporation.  Since defendants says that this could have been done under the Delaware common law, relying upon *Kennedy v. Emerald Coal & Coke Co.*, 26 *Del. Ch.* 302, 28 *A.* 2d 433, *affirmed* 28 *Del. Ch.* 405, 42 *A.2d* 398, such language, under their interpretation, would be merely declaratory of the common law.  The language in question is much more than a declaration of the common law when it is considered in connection with the definition of "interest" employed in the first sentence of the paragraph.  This is so because the second sentence permits the directors of Rayon to vote and thus be considered for quorum purposes, even though they are also directors of the affiliated or subsidiary company involved in the transaction.  This they could not otherwise do, assuming the paragraph to be restrictive, because as directors of the other corporation they would certainly, in the light of my interpretation of the language of paragraph 12 of the certificate, be "interested in such other corporation".  So being,

[2] Conceding that even under the language of this certificate the stock ownership might be so small as to be ignored, I think the stockholdings are too substantial to consider that possibility here.  The market value of the smallest interest is in excess of $15,000.  It is important to keep in mind that we are here dealing with "interest" under the quorum rule and with that "interest" as defined in the certificate. We are not dealing with the common law definition of "interest" or "interest" in connection with the testing of the fairness of the proposed sale.

they could not vote or be counted for quorum purposes. The last sentence, as I view it, grants the right to directors to vote and, therefore, be counted for quorum purposes in a strictly limited "interest" situation. In view of the granting of this narrow right to the directors, it does not seem unreasonable to infer that the director "interest" was assumed to be a disqualifying one otherwise.

In view of my interpretation of "interest" as employed in paragraph 12 of Rayon's certificate of incorporation, and I limit my conclusion to the "interest" represented by the stock ownership of 6 directors of Rayon in Beaunit, it is apparent that a majority of a quorum of disinterested directors did not vote in favor of the resolution under attack.

But defendants contend that the language of paragraph 12 of the certificate is merely exculpatory, and does not purport to strike down transactions not complying with its terms and provisions. They say that the validity of a transaction not validated by compliance with paragraph 12 must be tested by the common law of Delaware. It, therefore, becomes of crucial importance to determine whether the language of paragraph 12 of Rayon's certificate is exculpatory or restrictive.

In substance the first sentence of paragraph 12 states that in the absence of fraud no contract or transaction is rendered invalid merely because the directors are interested in the other corporation or personally interested in the contract or transaction. However, this language is limited by two provisos which require a disclosure of such interest and the affirmative vote of a majority of a disinterested quorum. It is true that the first sentence does not affirmatively state that a contract or transaction entered into with a corporation or individual, and in which any of the directors is interested, shall be invalid. Should this court infer from the language validating transactions where there is compliance with certain stated provisos that such transactions are invalid in the event there is no compliance

with the provisos? Defendants say that this restrictive interpretation is unwarranted because it would place contracts which are at most voidable at common law in the category of void contracts. They argue that a restrictive construction of the certificate would be contrary to common law principles. Consequently, they say that under the strict construction rule applicable to such a situation, the restrictive construction should not be adopted because the language of the certificate does not clearly evidence such an intention, citing *Investment Associates, Inc., v. Standard Power and Light Co.,* 29 *Del. Ch.* 225, 48 *A.* 2d 501, *affirmed* 29 *Del. Ch.* 543, 51 *A.* 2d 572.

I believe that paragraph 12 of the certificate should be interpreted to be restrictive in operation. The paragraph deals with the very problem of quorum and interest. If merely exculpatory, the stricter "interest" test provided for therein in connection with the quorum problem would be meaningless. This is so because under defendant's view of the applicable common law rule, stockholder interest is not that type of interest which disqualifies for quorum purposes. Some of the language is, therefore, concerned with imposing a limitation on the power of the directors. It is not all exculpatory in tenor.

It would seem to me to be ascribing a rather limited purpose to paragraph 12 which, theoretically at least, purports to chart the course of director action absent stockholder approval, to say that it is only exculpatory. I rather think it is both exculpatory and restrictive, and was so intended. The rule of so-called strict construction, if otherwise pertinent, can aid little here in determining the extent to which the certificate of incorporation has circumscribed the power granted the directors in this situation.

Defendants say paragraph 12 of the certificate is merely an enabling provision to take care of situations where directors were transacting business without submitting the matter for stockholder approval. The answer to this argument

must be that in selling assets under *Section* 65, valid director action is necessary in this situation. The subsequent stockholder action is another step. While it may sometimes constitute a safeguard, stockholder approval also has its limitations. That is certainly evident where, as here, a majority of the voting stock is owned by the other interested party to the transaction up for approval.

Defendants suggest that paragraph 12, if interpreted as I have interpreted it, violates *Section* 5, *Subdivision* 8 of the *General Corporation Law, Rev. Code* 1935, § 2037, *subd.* 8, because it would be "contrary to the laws of this State." The contention seems to be that under the Delaware common law, as defendants state it, the directors here were not "interested" for purposes of the quorum rule and that an attempt to make them so by language in the certificate of incorporation was not within the lawful power of the stockholders. I can think of no good reason why a provision defining the disqualifying "interest" of directors more broadly or narrowly than might otherwise be the case under the Delaware common law should be considered unlawful. As interpreted, it is a perfectly lawful provision which in no way offends any policy of this state. *State ex. rel. Cochran v. Penn-Beaver Oil Co.,* 4 *W.W. Harr.* 81, 143 *A.* 257, involved a materially different problem. I pause to note that this court is not here concerned with the wisdom or realism of such a provision.

My interpretation of paragraph 12 of Rayon's certificate of incorporation, coupled with the undisputed facts pertinent to the quorum issue, compels me to conclude that the resolution of the directors purporting to sell Rayon's assets pursuant to *Section* 65 was invalid because adopted in violation of paragraph 12 of the certificate of incorporation.

In view of my conclusion with respect to plaintiffs' first contention, I deem it unnecessary to consider the fairness of the plan. A preliminary injunction will be granted.

An order accordingly will be entered on notice.