210 A.2d 299 (1965)
CHRYSLER MOTORS CORPORATION, a corporation of the State of Delaware, Plaintiff,
v.
TOM LIVIZOS REAL ESTATE, INC., a corporation of the State of Delaware, Defendant.
Court of Chancery of Delaware, New Castle.
April 7, 1965.
Louis J. Finger, of Richards, Layton & Finger, Wilmington, for plaintiff.
Lawrence F. Hartnett, Wilmington, for defendant.
SEITZ, Chancellor:
The issues here are whether an option agreement ("option") to sell real estate is valid and, if so, whether it is specifically enforceable. Surprisingly enough, important legal points in this interesting case appear not to have arisen before in this State.
The option involved was granted by Tom Livizos Real Estate Inc. ("defendant") to Chrysler Motors Corporation ("plaintiff"). The defendant asserts that the option was invalid, inter alia, because it lacked sufficient consideration and that, in any event, it should not be specifically enforced for the same and other reasons considered herein. This is the decision after final hearing.
*300 In June of 1964, James C. McKeown ("McKeown"), representative of plaintiff toured the Price's Corner area looking for a site for a Dodge dealership. Later he examined the area with Howard W. Segal ("Segal"), a Philadelphia realtor who was engaged by plaintiff to search for and handle acquisitions of land for it. McKeown and Segal will be referred to as "plaintiff's agents" unless further differentiation is necessary. They saw defendant's land and a sign stating that defendant's offices would soon be erected there. Later Segal phoned Trifon Livizos ("Livizos"), the president of defendant, and told him that he had an unidentified client who was interested in purchasing the land and asked whether it was for sale. Livizos said the price would be $175,000 net. At Segal's request Livizos sent him a plot plan.
Later plaintiff's agents, pursuant to appointment, came to defendant's offices in Wilmington. They then revealed that plaintiff was the prospective purchaser. They presented to Livizos the option form which they brought with them and also discussed monetary terms. Plaintiff's agents and Livizos parted about noon for lunch. Livizos kept the option form, stating that he wanted to discuss it with someone. It was understood that plaintiff's agents were to call back about coming in later that day. Such a later arrangement was made. At this later meeting certain matters were discussed. Defendant's testimony tends to suggest that only one of plaintiff's agents was physically present at the locations where some of the negotiations and subsequent execution took place. I find this disputed factual area to be of no moment in my ultimate disposition of this case.
It is undisputed that Livizos suggested certain changes and insertions in the option form. For example, the proposed option provided that defendant would furnish plaintiff with a policy of title insurance within 10 days after the issuance of the option. Livizos suggested that this be changed to 30 days and a further provision be inserted that it would be at plaintiff's expense. The option provided that if rezoning was needed to permit the land use which plaintiff intended, then its exercise was conditioned upon obtaining it. Livizos suggested that words be inserted to provide that such rezoning would be at plaintiff's expense. Livizos felt that because of its wording the option might be in effect indefinitely. Consequently, he suggested that it contain a cut-off date for the exercise of the option at noon on December 11, 1964.
Plaintiff's agents agreed to the changes suggested by Livizos and they were made and the blanks filled in. The option recited a consideration of $1.00 for the granting of the option. The purchase price, in the event the option was exercised was $185,000. It was also provided that the defendant was to pay the broker's commission. The option was then executed (June 11, 1964) for the defendant by its President and Secretary and the corporate seal was affixed. Plaintiff's agents signed as witnesses.
Segal and Livizos discussed Segal's commission and agreement was reached concerning it. This was reflected in a separate agreement executed at the same time.
Thereafter plaintiff commenced certain preliminary investigatory work. However, about a week or so after the execution of the option, Livizos contacted Segal. I find that Livizos said that he felt he should have half of Segal's commission. Later, after Segal refused his request, Livizos suggested that if he did not share his commission "things" had a way of happening. By letter dated July 2, 1964, Livizos attempted to revoke the option.
Plaintiff exercised the option within the option period and proceeded to apply to have the land rezoned. It is not contended that plaintiff failed to process the zoning matter promptly.
*301 On September 22, 1964, plaintiff brought this action in effect to have specific enforcement of the agreement.
No final decision in the zoning matter was forthcoming before the December 11, 1964 deadline. However, shortly prior to December 11, plaintiff delivered to defendant, as permitted by the agreement, a waiver of the provisions dealing with rezoning and reiterated its insistence that defendant comply with the terms of the agreement. Defendant insisted that plaintiff had brought its action prematurely and said that, in any event, it was not entitled to enforcement of the option. The trial followed.
The first issue, presented in various forms, is whether the option was legally valid in the sense that it was irrevocable for the time stipulated therein. Defendant argues most vigorously that the option was in effect an offer which defendant had the right to withdraw before acceptance because it was not supported by consideration. Plaintiff urges various reasons why defendant's contention lacks merit but I need consider only its contention that because the option was under seal there can be no issue as to the sufficiency of the consideration in determining its validity.
It seems to be firmly established that an option agreement under seal is valid in a jurisdiction where the common law significance of the seal remains, even though no consideration is given. See 5 Williston on Contracts (Rev.Ed.), § 1441; see also 1 Williston on Contracts (Jaeger, 3rd ed.), § 217; see also §§ 61-61B. This is the result of the deference paid to sealed instruments at common law because of their formality. See 1 Williston on Contracts (Jaeger, 3rd ed.) § 217. Insofar as this court can ascertain, the seal presumably retains its common law significance in Delaware, at least in this general legal area. Many courts state that a seal imports consideration. See Kennedy v. Collins, 7 Boyce 426, 108 A. 48; compare Italo-Petroleum Corp. v. Hannigan, 1 Terry 534, 40 Del. 534, 14 A.2d 401. Whatever the legal formulation, the fact is that at law a court would not permit an issue as to the existence of consideration to be tried where the action was based upon a sealed instrument.
Defendant argues that since the option contains a recital of an actual consideration of $1.00 for the option, plaintiff cannot rely upon the seal to foreclose an issue as to whether the option is in fact supported by consideration.
Defendant relies upon the Canadian case of Norstrant v. Davidson, 51 D.L.R. 205. The majority of the court there did say that an option under seal which recites a consideration does not preclude the application of the doctrine of failure of consideration. The court found that the payment for the grant of the option, which was provided for in the option, had not been paid. It further found that the payment was essential to the creation of the option contract. The Davidson case is readily distinguishable from the present case because the court placed great emphasis on the recital that there was to be a payment of $100. It said there was not merely a covenant to pay. In the case for decision there is a recital of a $1.00 consideration but there is no language to suggest that its payment was a condition precedent to the creation of a valid option agreement. Next, the Canadian court said it was concerned with failure of consideration. We are not concerned with that issue but with the issue as to the existence of facts to support the initial validity of the agreement.
I therefore conclude, the $1.00 issue aside, that plaintiff is not prevented from relying on the seal. It follows that the option agreement is valid, insofar as the consideration issue is concerned. On this point I am determining validity in accordance with legal standards and I am not dealing with equitable remedies.
I next consider whether the court should specifically enforce the agreement created by the plaintiff's exercise of the *302 option. In this situation equity will consider the equities and as a part of that process will look behind the seal and examine, inter alia, the consideration supporting the so-called second contract. See 5 Williston on Contracts (Rev.ed.), § 1441. This is in accord with equity's exercise of a discretionary power.
Defendant concedes that the contract price for the sale of the land in question is fair and reasonable. However, it contends that the agreement is invalid and unenforceable for reasons not easy to state. Defendant's arguments seem to confuse the legal principles applicable to the question of the validity of an option agreement with those applicable to the right to specific performance of an agreement created by an exercise of the option. It is vitally important to keep in mind the distinction between the legal principles applicable thereto. See 5 Williston on Contracts, § 1441; James on Option Contracts, §§ 224, 332. Thus, the seal here precludes defendant from raising an issue concerning the sufficiency of the consideration supporting the option agreement, there being no fraud or similar conduct. With respect to the right of plaintiff to specific performance of the agreement created by the exercise of the option, the fairness of the recited purchase price is of prime importance. Defendant concedes it was fair and reasonable and so the real issue remaining is whether plaintiff is guilty of some other inequitable conduct which should stay the hand of equity.
Defendant says that plaintiff's agents were guilty of conduct which should warrant the denial of specific performance. It contends that plaintiff's agents rushed defendant into signing the option agreement. The option was signed the same day it was presented but defendant's president was aware of the proposed net purchase price before that day. Indeed, he suggested it. Moreover, he took time to consult with someone and made some rather significant changes in its form before executing it. He says he did not have time to consult his attorney. No one forced him to execute the option when he did. Certainly plaintiff cannot be blamed because defendant did not see fit to postpone the signing. While the defendant's president attempted to create the impression on the witness stand that he was not sophisticated in business affairs I find his testimony unimpressive. He has been active as an agent in the residential real estate field for quite a few years and was a party to an arm's length transaction. Nor do I find, as defendant charges, that plaintiff's agents made any misrepresentations of fact, innocently or otherwise.
I am satisfied that this transaction reached the courts because defendant's president, upon reflection, felt that he should have, in addition to the purchase price, a portion of the brokerage commission. Upon an evaluation of the evidence I conclude that there was no conduct on the part of plaintiff's agents which should cause this court to refuse plaintiff the relief to which it would otherwise be entitled.
Defendant says that plaintiff should be denied specific performance because of the lack of mutuality of remedy and obligation between the parties after the plaintiff exercised the option. Passing over the issue as to whether the doctrine of mutuality of remedy would otherwise be applicable (5 Williston on Contracts, Rev.Ed., § 1440), the fact is that Delaware does not require such mutuality in order to specifically enforce a contract where the remedy at law is inadequate. Baker Mach. Co. v. U. S. Fire Apparatus, 11 Del.Ch. 386, 97 A. 613.
The court has difficulty in understanding defendant's argument concerning lack of mutuality of obligation after the exercise of the option. When the option was exercised it created an agreement binding on both parties. Defendant's counsel next suggests that there is some ambiguity in the option agreement which should be resolved against plaintiff. I think the agreement contains no ambiguity which is here relevant. Defendant seems to confuse the time fixed for exercising the option with the *303 time limit for settlement in the event the option is exercised.
Finally, it is true, as defendant says, that plaintiff commenced this action before it exercised its option, but I think the action at that time must be viewed as one in effect seeking a judicial declaration that the option was still valid and binding despite defendant's attempt to revoke it. Since equity takes cognizance of subsequent events it seems appropriate now to look at the situation as it existed at the trial date. By that time plaintiff had exercised its option and had become entitled to the requested transfer of title. Defendant refused to comply. Plaintiff therefore became entitled to specific performance of the exercised option. The time and place of settlement may be incorporated in the order.
Present order on notice.