Joseph Greenspon's Sons Iron and Steel Company, a corporation of the State of Missouri, *v.* Pecos Valley Gas Company, a corporation of the State of Delaware.

(*June* 1, 1931.)

Rodney, J., sitting.

*Charles C. Keedy* (of the Delaware Bar), and *William T. Jones*

and *James E. Garstang* (both of the Missouri Bar, admitted *pro hac vice*) for plaintiff.

*Alexander Jamison* and *John Biggs, Jr.* (of the Delaware Bar), *Charles H. Watson* (of the Illinois Bar), and *F. W. Bartlett* (of the Texas Bar, both admitted *pro hac vice*), for defendant.

Superior Court for New Castle County, No. 278, September Term, 1930.

RODNEY, J., charging the jury:

This is an action by Joseph Greenspon's Sons Iron and Steel Company, a corporation of the State of Missouri, the ·plaintiff, against the Pecos Valley Gas Company, a corporation of the State of Delaware, the defendant, to recover a sum of money which the plaintiff claims is due to it by reason of the alleged breach of a contract.

The plaintiff claims that the defendant, on the 7th day of January, 1929, agreed to buy from it 45 miles of 6⅝" gas pipe at the sum of 61 cents a foot. The pipe was not delivered. The plaintiff has proved, and the defendant concedes that the plaintiff could have obtained the pipe at 51 cents a foot, and so the plaintiff alleges that he lost the sum of 10 cents a foot upon the amount agreed to be purchased. This by arithmetical computation amounts to $23,760.00 and this is the amount claimed by the plaintiff as the profits he would have made had the contract been carried out by the defendant.

The defendant denies that it is obligated to the plaintiff in any amount. It admits that Mr. Woods, the president of the defendant company, signed the contract in question, but it insists that the signature was affixed thereto in a conditional manner and was understood to be dependent upon the approval of the board of directors and of Mr. Burkett, the general manager, who subsequently would not and did not approve thereof and that, therefore, no valid contract was ever entered into on behalf of the defendant company. The defendant further contends that no delivery of pipe was to be made until shipping orders were given by the defendant and that the giving of the shipping orders in turn should depend upon the

completion of the arrangements for financing the company. The defendant contends that these arrangements of financing were expressly understood to be in charge of and the duty of Louis Greenspon, president of the plaintiff company, and related to the financing of an installation of a 6⅝" pipe and that Louis Greenspon failed to perfect any arrangements and that no arrangements of financing were or could be made with regard to the installation of a 6⅝" pipe and that, therefore, no shipping instructions were given, no pipe delivered and no indebtedness incurred.

\* \* \* \* \* \*

One question for your determination is the manner of the execution of the contract.

The defendant contends that the contract was signed with the express and explicit understanding that it would not be operative unless or until it was approved by Mr. Burkett, the general manager. It is not claimed that Burkett did approve it and the defendant expressly proved that he refused so to do.

The plaintiff denies that the contract was conditional or dependent upon the approval of Burkett in any manner, but on the contrary contends that it was unconditional insofar as any approval of other parties was concerned.

This feature of the case is quite important. If you should find from the evidence that the contract was agreed to be conditional upon the approval of Burkett and should further find that Burkett did not approve it, then such finding would be determinative of the case and your verdict should be for the defendant, for in such case no valid contract would have subsisted and no indebtedness created, unless you should find that the contract was afterwards ratified, which subject I shall consider at a later stage of this charge.

If, on the other hand, you should find from the evidence that the contract was unconditional and not subject to any approval by Mr. Burkett, the general manager, then you should further consider the matter with reference to the power of the president to bind the defendant company.

At this point I may be of some service, for as it is the duty of the jury to determine the facts of a case, so it is the duty of the court to pronounce the law applicable thereto and the power of a corporate officer may often be a mixed question of law and fact.

■ A corporation is an artificial being created by law and acting under the authority of law for designated purposes. Being artificial and the mere creature of the law, it can only act by its officers and agents. Its officers are its agents or rather the agents of those who compose the corporation and many of the principles of law applicable to the relationship of principal and agent apply to the question of powers of a corporate officer. The precise question here involved is whether a corporation is bound by the contract or writing of the president alone where it involves a contract for 45 miles of pipe at 61 cents a foot involving the expenditure of $144,-936.00, without express authority from the board of directors.

Many cases concerning the powers of a president of a corporation have been presented to me and I have examined a very large number of them. I do not propose to prolong this charge with a long and confusing citation of, or from, authorities, but to cull from them what I consider to be the law.

I have been asked specifically to charge you that if you should find that Albert T. Woods, president of the defendant corporation, signed the contract in question, that then the corporation would necessarily be conclusively bound by such contract, for I am requested to state that the power of a president of a corporation is as complete and effective as is the power of a board of directors acting pursuant to a vote of the board.

This I decline to do as I deem it an extreme and incorrect view of the powers of a president of a corporation.

■ The powers of a president of a corporation, i. e., the powers over its business and property, are, of course, merely the powers of an agent, for a corporation can speak in no other manner. The control over the company's business and property is vested in the board of directors, but subject to this control certain powers are delegated by implication to certain officers. Corporations have assumed and acquired such a position in the business world that the

office of president carries with it certain implied powers of an agency. He is usually either expressly or by implied consent made the chief executive officer, without special authority or explicitly delegated power he may perform all acts of an ordinary nature which by usage or necessity are incidents to his office and by virtue of his office he may enter into a contract and bind his corporation in matters arising from and concerning the usual course of the corporation's business. These are the implied powers of the president of the corporation and they inhere in him by virtue of the position itself. Beyond these powers—beyond the carrying out of the usual and proper functions of the corporation necessary for the proper and convenient management of the business of the corporation, the president remains as any other director of the company, and other and further powers must be specifically conferred.

The plaintiff contends that the action of the president in ordering the pipe was an ordinary and usual duty and within the powers impliedly placed by the law in a president who is also managing executive of a corporation. Whether or not this is true in any given case depends upon all the facts of the case, including the character of the goods ordered, the amount thereof in relation to the size and condition of the company, the nature of the company, its purposes and aims, and upon many other facts and circumstances. Whether or not a specific action of a president is within his usual duties is, therefore, a question of fact for the determination of the jury.

The powers of a president of a corporation in excess of those hereinbefore suggested, that is, in excess of power over the ordinary and usual business of the corporation, must be specifically given, and the following are the usual sources of this grant of power:

1. Some provision of statutory law;
2. Corporate charter;
3. Some by-law of the company;
4. Resolution of the board of directors.

I am referred to no appropriate statute, charter provision or resolution of the board of directors conferring additional power on the president. Section 12 of the By-Laws has been admitted into

evidence covering the powers of the president. It provides as follows:

"The President shall be the chief executive officer of the company; he shall preside at all meetings of the directors; he shall have general and active management of the business of the company; he shall see that all orders and resolutions of the Board are carried into effect; he shall execute all contracts and agreements authorized by the Board; he shall keep in safe custody the seal of the company and when authorized by the Board affix the seal to any instrument requiring the same and the seal when so affixed shall be attested by the signature of the Secretary or the Treasurer.

"He shall sign all certificates of stock and checks for the payment of money.

"He shall have general supervision and direction of all other officers of the company and shall see that their duties are properly performed.

"He shall submit a report of the operations of the company for the fiscal year to the Directors at their first regular meeting in each year and to the stockholders at their annual meeting and from time to time shall report to the Directors all matters within his knowledge which the interests of the company may require to be brought to their notice.

"He shall be ex officio a member of all standing committees and shall have the general powers and duties of supervision and management usually vested in the office of the President of a corporation."

This you will consider in the solution of the present question.

A fifth and perhaps the most usual source of the grant of the unusual or extraordinary powers of a president arises by implication of law from a course of conduct on the part of both the president and the corporation showing that he had been in the habit of acting in similar matters on behalf of the company and that the company had authorized him so to act and had recognized, approved and ratified his former and similar actions.

As said in *Stokes v. New Jersey Pottery Co.*, 46 *N. J. Law* 242:

"There are cases in which the powers of an officer of a corporation, and his authority to act for the company, are enlarged beyond those powers which are inherent in his office. But those are cases in which the agency of the officer has arisen from the assent of the directors, presumed from their consent and acquiescence in permitting the officer to assume the direction and control of the business of the company. * * * Thus, when, in the usual course of the business of a corporation, an officer has been allowed in his official capacity to manage its affairs, his authority to represent the corporation may be implied from the manner in which he has been permitted by the directors to transact its business. * * * These are simply instances of the application of the principle that usual employment is evidence of the powers of an agent, and a responsibility will be laid upon the principal for the acts of his agent within the apparent authority so conferred upon the agent—a doctrine which has come to be applied to corporations in many respects as well as to in-

dividuals, and with the same qualifications and limitations. * * * In such cases, the authority of the officer does not depend so much on his title, or on the theoretical nature of his office, as on the duties he is in the habit of performing."

The plaintiff relies upon this fifth principle, and claims that the president of the defendant company had on prior occasions entered into somewhat similar contracts as here involved, which were recognized by the defendant company, and that the defendant company held out its president, Mr. Woods, to the public as having authority to enter into contracts.

The defendant denies that the president at any time signed any similar contract without express authority of the board of directors.

This, then, constitutes a question of fact for your determination.

If you should find from the evidence that the president, Mr. Woods, was not acting within the usual scope of his office, and that he had not in the past acted alone in the signing of contracts, and that the defendant company had never recognized any acts of the president alone or had not held him out as qualified to transact singly and alone all business dealings for the company, then your verdict must be for the defendant, for I say to you it is only upon these principles, upon the proven facts of the case, that the act of the president could bind the corporation.

If, however, you should find, as the plaintiff contends, that the president was acting within the usual scope of his employment, or that he had on prior occasions entered into contracts and bound the corporation which recognized and approved such acts and held him out as authorized so to deal with the company's officers, then your verdict may be for the plaintiff if consistent with other principles herein mentioned.

The plaintiff contends that the order or contract of January 7, 1929, was afterwards ratified and approved in a subsequent meeting in March or April. The defendant expressly denies this ratification and approval, and so the ratification becomes a disputed question of fact. I say to you that if you should find that the approval of Mr. Burkett was a condition attached to the original order, and should further find that Mr. Burkett subsequently ratified the contract, then such ratification would have the same

effect as an original approval. If, however, you should find that there was no subsequent ratification by Mr. Burkett, then I say that the mere discussion of the original contract without ratification has no effect as furnishing the original approval if such be found necessary.

And lastly the defendant contends that the°alleged contract of January 7, 1929, never became binding because it says it was expressly agreed that the contract should be binding only when the financing had been completed for the installation of a 6⅝" pipe, and that the company was not and could not be financed for the installation of such a pipe, and, therefore, the time for the giving of shipping instructions never arrived.

The plaintiff denies these allegations and relies upon the making of the contract for the sale of the pipe and the subsequent financing of the company and contends it is not concerned with how the company was financed nor by whom.

You are to determine this case upon what we call a preponderance of the evidence. By this we do not necessarily mean the greater number of the witnesses, but the greater weight of the testimony, as it appears to you as having been detailed from the witness stand.

Of course, in every case, it is always the duty of the jury to reconcile all of the testimony in the case so as to make of it one harmonious story. But obviously in many cases this cannot be done when the testimony is in violent conflict. In such a case, it is the province as well as the duty of the jury to accept and give credence to that testimony which you believe to be true, and you may utterly discard any testimony which you believe to be untrue; and in doing this you may take into consideration the manner of the witnesses on the stand, their apparent fairness in giving their testimony, their opportunity of ascertaining the facts about which they testify, any bias or interest that they may have in the result or outcome of this litigation, or any other matters that may appear to you as having been detailed from the witness stand.

Summarizing and in conclusion I say to you that if you should find from the evidence that the contract of January 7, 1929, was a

plain unconditional contract to be effective without further or other approval, and that the president, Albert T. Woods, who signed the same, was either acting in the usual scope of his duties or had been in the habit and custom, with the knowledge and approval of the board of directors, of so acting alone on behalf of the company, or that the action of the president was afterwards ratified and approved, and should further find that all the agreements of the parties with regard to the financing of the company have been duly and regularly complied with, then your verdict should be for the plaintiff.

If, however, you should find from the evidence that the agreement of January 7, 1929, was conditional upon the obtaining the signature of Mr. Burkett, and was so understood by the parties, and that such consent was never obtained, and shall find that such contract was not afterwards ratified or confirmed, then your verdict must be for the defendant.

Your verdict must also be for the defendant if you should find that Albert T. Woods had no right or power to bind the corporation by the contract and had not theretofore so acted alone for the corporation; or that the conditions of the contract with relation to financing the corporation have never been complied with, within the agreement and understanding of the parties.

If your verdict should be for the plaintiff, it should be for such sum as you shall find from the evidence that the plaintiff has been damaged by the alleged breach of the defendant, not exceeding the amount claimed by the plaintiff.

The measure of this damage would be the difference between the contract price, that is, the price the plaintiff was to have received for the pipe and the market price at which the plaintiff could have obtained the pipe. This difference would represent the amount of his prospective profit.

If your verdict should be for the defendant, it should simply be, verdict for the defendant.