**MOLASKY ENTERPRISES, INC.,**
**Plaintiff-Appellant,**

v.

**CARPS, INC., Defendant-Respondent.**

**No. 41840.**

Missouri Court of Appeals,
Eastern District,
Division Two.

April 7, 1981.

---

Theodore D. Ponfil, Blumenfeld, Marx, Tureen & Paster, Clayton, for plaintiff-appellant.

Burton Greenberg, St. Louis, for defendant-respondent.

WEIER, Judge.

When Herbert M. Carp and Emile S. Carp as corporate officers endorsed their personal note and executed other papers on behalf of the corporation to obtain a personal loan at Lindell Trust Company, they failed to obtain formal authorization or approval from the board of directors of the Carps, Inc. Molasky Enterprises, Inc., the assignee of the second endorser, Allan Molasky, paid a balance of $267,000 on the note to Lindell Trust and then sought to recover from Carps, Inc., as first endorser. The case was tried to the court without a jury and judgment was rendered for the defendant Carps, Inc. A third party petition brought by Carps, Inc., as defendant against Herbert M. Carp and Emile S. Carp was dismissed. Appeal was taken by plaintiff Molasky seeking to reverse the trial court's decision and enter judgment on behalf of plaintiff. Because plaintiff contends that the trial court erred in entering its judgment for the reason the evidence clearly established that Herbert and Emile Carp had authority to bind Carps, Inc., as first endorser on the note and an agreement of guaranty, we will consider the facts and evidence in some detail.

In December 1972 Herbert and Emile Carp, members of the board of directors and president and executive vice-president, respectively, of Carps, Inc., applied for a personal loan in the amount of $267,000 from Lindell Trust. They told the bank that the loan proceeds would be used to satisfy personal obligations to Carps, Inc., so the corporation's annual statement would not reflect outstanding loans to officers. Lindell Trust informed Herbert and Emile who were brothers that they would not approve the loan without endorsement. The Carp brothers then asked Allan Molasky of Molasky Enterprises to endorse the note. They told Molasky that the funds were needed to repay a personal indebtedness to the Creve Coeur Bank and Trust Company. They also told Molasky that

Carps, Inc., was in the process of negotiating for refinancing and they wanted to avoid any default on their personal obligations during these negotiations. Molasky consented and placed his endorsement on the note after it was executed by Herbert and Emile in their personal capacity and after Herbert Carp had endorsed the note in the name of the corporation. Molasky testified that he did not ask for a corporate resolution authorizing the endorsement of Carps, Inc., on the note. Neither did he inquire from any of the other members of the board of directors whether Herbert as president had authority to bind the corporation. He explained that he knew Carps, Inc. was a closely-held family corporation and that they ran their business in an informal and casual manner. He relied on the oral assurances of the two brothers that they had authority to execute documents on behalf of the corporation.

When the Carp brothers applied for their loan to Lindell Trust, the bank asked for a corporate resolution authorizing this act because it was their policy to obtain one on all loans executed or endorsed by corporations. The loan, however, was processed without a corporate resolution being produced. Further requests were made three or four times before the original demand note was renewed on February 27, 1973, but none was ever forthcoming. The bank was assured by Herbert and Emile that they had the requisite authority to sign the corporation's name at the time the loan was made. No effort was made by the bank to check with any of the other directors of Carps, Inc., to determine whether the endorsement was a corporate act.

The proceeds of the original note were paid to Herbert and Emile Carp in part upon authority of a letter from Carps, Inc., authorizing the disbursement. This letter was signed by Herbert and Emile Carp. The Carp brothers used the loan proceeds to pay off their personal indebtedness at Creve Coeur Bank. By September 1973 Herbert and Emile had defaulted on the last renewal of their demand note. Formal demand for payment was made on Carps, Inc. on September 18, 1973 by Lindell Trust.

When Carps, Inc. did not pay the note, Lindell Trust then made formal demand for payment on Allan Molasky. In January 1974, plaintiff, Molasky Enterprises, Inc., paid the balance due on the note obligation and at the same time received an assignment from Allan Molasky of all of his rights and interest in the instrument. Thereafter Lindell Trust endorsed the demand note to plaintiff Molasky Enterprises as its transferee.

At the time Molasky agreed to endorse the Lindell Trust note, Herbert and Emile executed in their personal capacity and as officers of Carps, Inc., two other documents in favor of Molasky. One of these documents was a promissory note payable to Allan Molasky in the amount of $267,000. The other document was an agreement which contained a personal guaranty that the Carp brothers would pay the Lindell Trust note in full. No securities or collateral were taken contemporaneously with the execution of the note and agreement. Later, however, after plaintiff paid the note, Herbert and Emile pledged collateral in the form of notes and deeds of trust, some of which also included security instruments of Mary Carp, mother of Herbert and Emile. The name of Carps, Inc. was not used in these later transactions which occurred between September 13, 1973 and July 5, 1974. Plaintiff has received partial payment from Herbert and Emile and the parties stipulated at trial that $129,000 remained unpaid.

When the original instruments were executed, the board of directors of Carps, Inc. consisted of seven persons: Herbert Carp, Emile Carp, I. L. Carp, Meyer Carp, Zola Carp, Stephen Carp, and Herman Willer.[1] At the time of trial I. L. Carp, Meyer Carp, and Zola Carp, uncles of Herbert and Emile, were all deceased. There is testimony in the record that Herbert and Emile showed the notes and agreement to their uncles who gave them their "blessing." Stephen Carp and Herman Willer were not informed of the transaction. Herbert testified that his uncles' blessing was family approval rather than corporate approval, but he was also allowed to testify he assumed he had corporate authority to sign the notes and agreement. Herbert and Emile both stated that they understood the Lindell Trust note represented a personal obligation, not a corporate one. The corporation's minute book does not disclose a corporate resolution authorizing the transaction nor does it disclose any ratification of the transaction at any subsequent meeting of the board of directors. No other papers in the case indicate any action by the board of directors.

■ No request for findings of fact or conclusions of law was made in the case. Therefore all fact issues on which no specific findings are made are considered as having been found in accordance with the result reached and the judgment will be affirmed if it is correct on any reasonable theory supported by the evidence. *Roth v. Roth*, 571 S.W.2d 659, 664[2] (Mo.App.1978); Rule 73.01(a)(2). Our scope of review in a court-tried case has been construed to mean: "[J]udgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976).

■ Initially, plaintiff contends that Carps, Inc., a Delaware corporation, was fully empowered to endorse the note and other papers which are the subject of this lawsuit. In support of this position plaintiff cites sections of the Delaware Corporation Act. We concede that the laws of Delaware apply as urged by the parties because the powers and existence of a corporation are derived from the state creating it. It functions under its charter which is a contract between it and the state in which it is organized. The statutory laws of the

---

1. There is testimony in the record that Herman Willer was not a director at this time but the minute book of the corporation shows that the seven-member board was not reduced to six members until Carps' annual meeting on February 20, 1973. The exact number of directors, however, is not dispositive of the issues in the case.

state applicable to it enter into and become a part of its articles of incorporation. *Pacific Intermountain Express Co. v. Best Truck Lines, Inc.*, 518 S.W.2d 469, 472[2, 3] (Mo.App.1974).

Section 143 of the Delaware Corporation Act authorizes a corporation to lend money to or guarantee any obligation of any officer or other employee of the corporation. Such action by the company, however, is conditioned by the statute upon an exercise of the judgment of the directors and a determination by them that such loan, guaranty or assistance may reasonably be expected to benefit the corporation. 8 Del. Code Ann. § 143 (1975). Section 124 abolishes the defense of ultra vires in all but three instances not pertinent to this decision.[2] We do not look upon ultra vires as a valid defense here, however.

Considering Section 143 of the Delaware Code above described as it bears upon the record before us, there is no actual proof that any disinterested director of Carps, Inc. exercised his judgment after an opportunity was afforded him to consider the extension of corporate credit to the personal loan of Herbert and Emile and authorize the execution of the documents on behalf of the corporation. As is more fully demonstrated hereafter it would be impossible to sustain an inference that Herbert and Emile had authority, either formal or informal, to bind the corporation as guarantor of their personal obligations. The issue of whether Herbert and Emile Carp had the necessary authority to bind the corporation becomes, as is recognized by the plaintiff, a question of agency.

A corporation is an artificial being and it can act only through its agents. Its officers are its agents and many of the principles of law applicable to the relationship of principal and agent apply to the questions arising out of the existence and extent of the powers of corporate officers. *Joseph Greenspon's Sons Iron & Steel Co. v. Pecos Valley*, 4 W.W. Harr. 567, 156 A. 350, 351[2] (Del.Super.1931). *See also, Globe Indemnity Co. v. First Nat. Bank in St. Louis*, 133 S.W.2d 1066, 1071[3, 4] (Mo.App.1939).

In this light we examine the contention that Herbert and Emile had both actual and apparent authority as officers to endorse and execute the instruments which are the subject of this lawsuit to secure their personal indebtedness and thus bind the corporation. As heretofore stated, the record does not support this position. It is clear that Herbert ad Emile were given a free hand in the day-to-day management of the corporation. At no place, however, does it appear in the corporate minutes that Herbert and Emile were authorized to pledge the assets of the corporation or guarantee the payment of any indebtedness of officers. Although the president of a corporation is empowered to transact without special authorization from the board of directors all acts of an ordinary nature which are incident to his office by usage or necessity which extends even to authority to bind the corporation for the execution and transfer of negotiable paper in the ordinary course of company business, such power to bind the principal by making, accepting or endorsing negotiable paper is an important power, susceptible to abuse and dangerous in its consequences to the company. *Italo-Petroleum Corp. of America v. Hannigan*, 1 Terry 534, 14 A.2d 401, 406[14] (Del.1940); *Joseph Greenspon's Sons Iron & Steel Co. v. Pecos Valley, supra; Willsey v. W. C. Porter Farms Company*, 522 S.W.2d 29, 32[3] (Mo.App.1975); *see also, Globe Indemnity Co. v. First Nat. Bank in St. Louis, supra.* It is obvious that authority of this nature is limited to the transaction of the corporation's regular business and for the benefit of the corporation. Authority to transact acts of an ordinary nature in the usual course of business does not include authority to sign accommodation paper or as security for a third person. Such authority must be specially given. *Italo-Petroleum Corp. of America v. Hannigan, supra* at 406. *See also, First National Bank of Clayton v. Frisco Park Realty Company*, 510 S.W.2d 59, 62[2–6] (Mo.App.1974).

The court properly found by its judgment there was no actual authority to

---

**2.** This section is almost identical in its terms to § 351.395, RSMo 1975.

bind the corporation in the endorsement and execution of the instruments on which the litigation was based. No corporate resolution was passed authorizing the transaction. No other document was produced which authorized such action by the officers of the company. No minutes of the board of directors or of any committee of the corporation were produced which indicated that the authorization had been acted on. Plaintiff contends that express authority was given orally by five of the members of the board of directors. The evidence indicates Herbert Carp informed his three elderly uncles that he and Emile were borrowing money to pay off a personal loan to Creve Coeur Bank. One would have had to have been approached on this subject in his home since he was so ill he could not come to work at the time of the transaction. Herbert showed the Lindell Trust note to his uncles. According to Herbert they gave their "blessing," a term which he considered to mean consent. He did not tell them, however, that Carps, Inc., was going to be an accommodation party. There is no formal convening of the board of directors. Two directors Stephen Carp and Herman Willer were not even informed of the transaction. Concurrence of Herbert and Emile Carp in the approval of such transactions cannot be counted to make up a majority of the board because they were interested directors. *Italo-Petroleum Corp. of America v. Hannigan, supra* at 408. There is obviously a failure to present the matter for consideration and obtain the consent of a majority of the board of directors.

▪ Even as we have held on the issue of express authority, plaintiff may not rely on implied authority. Implied authority depends on the actual relationship between principal and agent and not what a third party may have been told or may believe as to that relationship. *Guyer v. Haveg Corp.*, 205 A.2d 176, 180[4] (Del.Super.1964). It is a type of actual authority and the evidence as we have pointed out fails to establish this kind of relationship. Past conduct of the officers and board in connection with other matters that are not involved with the same type of transaction

as this case is not proof that the president had implied authority to make the company liable on a personal loan of the president.

▪ The contention that Herbert and Emile Carp had apparent authority to sign on behalf of the corporation also fails. Apparent authority is brought into existence by the corporation's creation of an appearance of affairs which would cause a reasonable person to believe that the officer had actual authority to do a particular act upon which appearance a third party relies. *Guyer v. Haveg Corp., supra* at 180[5–9]. *See also, Willsey v. W. C. Porter Farms Company, supra* at 32. It is the conduct of the principal not the acts of the agent which create apparent authority.

▪ Ratification and estoppel are also urged as an effective basis to reverse the trial court on the grounds that the evidence was overwhelming that the board of directors of Carps, Inc., ratified the action of Herbert and Emile by acquiescence or under the principle of estoppel. Neither estoppel nor ratification were pled by the plaintiff. Even if this had been done, it would appear that the facts presented to the court below could not compel a favorable determination on either theory. Two members of the board of directors were not made aware of the December 1972 transaction. Herbert Carp testified that his three uncles, one of whom was ill at home, saw the Lindell Trust notes. Herbert and Emile, also members of the board of directors, cannot be counted to make up a majority of the board of directors as previously pointed out because they were interested in the transaction. Directors of a corporation may ratify any unauthorized act not done or entered into by themselves which they could have originally authorized, but such action must be taken by a majority of the directors. *Santa Fe Hills Golf & Country Club v. Safehi Realty Company*, 349 S.W.2d 27, 37[10–12] (Mo.1961). Here there is no indication there was a full disclosure of the facts to the other members of the board and that they actually knew what had happened or that anything similar had happened be-

fore. The first essential in ratification is that the principal have full knowledge of all the material facts at the time he is charged with having accepted the transaction as his own. *Dudley v. Dumont*, 526 S.W.2d 839, 848[29, 30] (Mo.App.1975).

 Estoppel of the principal to deny authority as in the case of apparent authority must depend upon the conduct of the principal and presupposes either knowledge of the transactions and acquiescence therein or that the principal places the agent in such a situation that a person of ordinary prudence is justified in presuming the agent has authority. *Jeff-Cole Quarries, Inc. v. Bell*, 454 S.W.2d 5, 12, 13[1–4] (Mo.1970); *Schimmel Fur Company v. American Indemnity Company*, 440 S.W.2d 932, 938[5] (Mo.1969). Prior knowledge by a third party of similar previous acts must be established to prevail on a theory of agency by estoppel. *Austin-Western Road Machinery Co. v. Commercial State Bank*, 255 S.W. 585, 586[2] (Mo.App.1923). Here no evidence indicated prior similar endorsements were made or were within the knowledge of Molasky.

Our holdings on the points discussed sustain the judgment of the court and eliminate the need to discuss the remaining points on appeal.

Throughout this case plaintiff had the burden of proof. Much of the evidence consisted of oral testimony. The court, being the trier of fact, had to weigh the evidence and could either accept or reject the testimony of plaintiff's witnesses. The existence of an agency relationship was a question of fact for the trier of the facts. *Labor Discount Center, Inc. v. State Bank & Trust Company of Wellston*, 526 S.W.2d 407, 423[11] (Mo.App.1975). The trial court was the arbiter of the facts in this court-tried case and it may believe or disbelieve the testimony of witnesses as it chooses even where the testimony is uncontradicted. *Labor Discount Center, Inc., supra* at 420–21[4, 5]. We defer to the findings of the trial court and support its judgment.

We deny respondent's motion to strike appellant's brief.

The judgment is affirmed.

PUDLOWSKI, P. J., and GUNN, J., concur.