In re MATERIAL ENGINEERING
ASSOC. LTD., Debtor.

Gary D. BARNES, Trustee in
Bankruptcy, Plaintiff,

v.

Margaret J. HECKMAN, an individual

and

Estate of Roland V. Heckman.

Bankruptcy No. 92–43472.
Adv. No. 93–4155–2.

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

June 8, 1994.

Michael Elbein, Litman, McMahon & Brown, Christine A. Haggerty, Husch & Eppenberger, Kansas City, MO, for trustee.

Charles E. Hammond, Boddington & Brown, Overland Park, KS, for Margaret J. Heckman.

Erlene Krigel, Krigel & Krigel, Kansas City, MO, for Estate of Roland Heckman.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

This case comes before the Court on trial to determine the ownership of two insurance policies and to determine title to certain equipment presently in the possession of one Scott Kessler. The Court held a two day bench trial on March 3 and March 4, 1994. The parties were given an opportunity to file post-trial briefs which they have done. Having duly considered the evidence and arguments of counsel, the Court makes the following findings of fact and conclusions of law:

### Facts

This case presents the tragic story of Roland Heckman (Heckman) who died by his own hand on July 30, 1991. Heckman attempted to provide for the financial maintenance and support of his widow, Margaret Heckman, before his untimely death by designating her the beneficiary of over $500,000 in insurance proceeds. However, the manner in which Heckman obtained ownership of the insurance policies and designated Margaret Heckman as beneficiary has been questioned by Gary Barnes, the bankruptcy trustee (Trustee).

Heckman was an engineer and a lawyer. In 1980 he formed Material Engineering Associates, Ltd. (MEA), a Missouri corporation, to operate a metals testing laboratory. MEA conducted business under the trade name Weldon Laboratories. Also in 1980, Bruce Maxfield (Maxfield) became Heckman's business partner, with each holding a 45% interest in MEA. Heckman and Maxfield entered an Operating Agreement which specified the compensation each was to receive for services to the corporation, outlined an arbitration procedure to settle disputes, and appointed a board of directors. MEA's board consisted of Maxfield, Heckman, Margaret Heckman, and Roberta Bowman, Maxfield's girlfriend. Heckman was the corporation's president and was in charge of its day-to-day operations. While Maxfield was the corporation's vice-president, he lived in California and was not involved in the day-to-day affairs of the corporation. Margaret Heckman was the corporation's secretary. Heckman and Maxfield agreed that MEA would purchase insurance policies on their lives. MEA would be the owner and beneficiary of those policies.

In addition to his work for MEA, Heckman was a practicing attorney. During MEA's early years, Heckman devoted the majority of his time to corporate matters, with only a fraction of his time devoted to the practice of law. Over the years, Heckman's law practice came to occupy about an equal portion of his time. Heckman employed Anita Fromholtz as his secretary at MEA, but she also functioned as his legal secretary. From 1982–1988, MEA was more profitable than Heckman's law practice, and MEA funds were used to pay law office expenses. Heckman used MEA funds for personal expenses as well. During the entire existence of MEA, Heckman commingled the funds of MEA, his law practice, and his personal assets. Heck-

man freely transferred funds from account to account to pay expenses as they came due, whether those expenses arose from MEA's operations, the law office or his personal life.

Pursuant to their agreement, MEA obtained life insurance policies from Connecticut Mutual Life Insurance Company (Connecticut Mutual) on the lives of Heckman and Maxfield. Hans Van Geer (Van Geer), a Connecticut Mutual insurance agent, handled the Connecticut Mutual policies for MEA. Maxfield assumed that both he and Heckman would be covered equally. However, Heckman only obtained insurance on Maxfield's life in the amount of $250,000, but he insured his own life for $500,000. Heckman obtained two $250,000 Connecticut Mutual policies: a Whole Life Policy, policy number 4088523 (CML # 523), and a Term Life Policy, policy number 4088524 (CML # 524). Both policies listed MEA as owner and beneficiary.

In 1986, Transamerica Occidental Life Insurance Company (Transamerica) offered to exchange, dollar for dollar, other companies' policies for Transamerica policies. Heckman applied for a $500,000 Transamerica policy. Van Geer assisted Heckman in this application process. The Transamerica application listed MEA as the owner and beneficiary of both policies. Neither of the Connecticut Mutual policies could have been exchanged for one Transamerica policy had their owners been different. Transamerica issued policy number 92057688 (TA # 668), listing MEA as owner and beneficiary.

On or about March 25, 1986, Heckman completed a "Transfer of Ownership" form, transferring TA # 668 from MEA to Heckman individually. Van Geer assisted Heckman with the paperwork necessary to effect the transfer. When the owner of a policy was a corporation and the proposed transferee was a corporate officer or director, Transamerica required a certified copy of a board of directors' resolution authorizing the change of ownership to accompany the transfer form. Heckman filed a copy of a board of directors' resolution. The resolution was signed by Heckman and Margaret Heckman. No directors' meeting ever occurred; nor did the corporation approve the transfer of own-

ership of TA # 668. Margaret Heckman's signature was a forgery.

On March 26, 1986, Heckman, as the purported owner of TA # 668, changed the beneficiary from MEA to Margaret Heckman, as the primary beneficiary, and his daughter, as the contingent beneficiary. Van Geer assisted Heckman with the paperwork necessary to effect the change of beneficiary.

The face value of TA # 668 was $500,000. To receive this death benefit, both CML # 523 and CML # 524 had to be exchanged. Heckman immediately exchanged CML # 524, the term policy. However, CML # 523 was a whole life policy that had a cash surrender value. Heckman stopped paying premiums on the policy in hopes of a lapse. Connecticut Mutual executed an automatic series of loans against the cash surrender value of the policy to pay the premiums. Thus, CML # 523 never lapsed and was never surrendered to Transamerica. Because CML # 523 was never surrendered, TA # 668's policy terms limited its coverage to $250,000 and a refund of half the premium payments.

Following the issuance of TA # 668, Connecticut Mutual began what has been called its "Update Program". Under the Update Program, Connecticut Mutual sought to avoid low fixed interest rates on loans taken out against Connecticut Mutual policies. Connecticut Mutual offered policyholders a term policy, premium free for ten years, in exchange for higher interest rates. CML # 523 qualified for the Update Program, and MEA was offered a premium free term policy in the amount of $52,500. On June 2, 1987, Heckman applied for the Update Policy to be issued in his name; however, Connecticut Mutual required that the Update Policy be issued in the same name as the owner of the base policy, CML # 523. Since CML # 523 listed MEA as its owner, Connecticut Mutual denied the application. On April 26, 1988, Heckman again applied for the Update Policy, to be issued in MEA's name with Margaret Heckman as beneficiary. Connecticut Mutual issued the Update Policy. Van Geer assisted Heckman with both Update applications.

In 1989, MEA faced severe financial difficulties. Heckman incorporated a second company, R.H. Engineering, and transferred all of the lab equipment into this new entity. Such transfer was for minimal or no consideration. The new company inherited all of MEA's customers, and Heckman deposited MEA receivables into an R.H. Engineering account. R.H. Engineering paid some of MEA's tax liabilities. The new company continued to do business under the "Weldon Laboratories" trade name, and it conducted business at the same location as MEA. Currently, Scott Kessler possesses the assets of R.H. Engineering.

MEA forfeited its corporate charter on July 23, 1990. Heckman committed suicide on July 30, 1991. Immediately preceding his death, Heckman contacted Van Geer concerning the transfer of ownership of CML # 523 from MEA to Heckman with Margaret Heckman named as beneficiary. The morning after the suicide, Van Geer and Anita Fromholtz discovered the completed transfer forms in Heckman's office. Van Geer asked Anita Fromholtz to posthumously witness these documents. When Anita Fromholtz refused, Van Geer destroyed the documents.

This voluntary Chapter 7 bankruptcy was filed on October 23, 1992. The Trustee filed this adversary complaint on September 8, 1993. The Trustee sought to avoid the transfers of assets and a turnover of property.

## Discussion

The Court is asked to decide three issues of fact and law in this adversary proceeding:

1) Who is entitled to the proceeds of TA # 668?

2) Who is entitled to the proceeds of the Update Policy?

3) Who is entitled to the proceeds from the sale of certain equipment in the possession of Scott Kessler?

The Trustee argued that the transfer of TA # 668, the designation of the Update Policy beneficiary, and the transfer of equipment were fraudulent conveyances under Missouri law. See V.A.M.S. § 428.029 (1992). The Trustee seeks to avoid the transfers using his 11 U.S.C. § 544 (1992) avoidance powers.

### A. Corporate Authority

█ The validity of the transfers hinges on whether Heckman had the power and authority to act on MEA's behalf. This was the principal issue argued by the parties. Most of the parties' efforts focused on the insurance ownership issues. There was little dispute that the equipment transfer was a fraudulent conveyance. As a result, the Court will devote most of this discussion to the insurance issues.

The Trustee contended that a board of directors' resolution from a properly convened directors' meeting was required before a transfer of TA # 668 could be effected. Since no meeting was held and no resolution passed, the Trustee argued that no transfer of TA # 668 could be effected. Similarly, the Trustee argued that the designation of the Update Policy beneficiary required board approval. No meeting was held, no resolution passed, and therefore, the Trustee argued that the designation fails.

Margaret Heckman, on the other hand, argued that Heckman was empowered by virtue of his position as MEA's president to execute the transfers. She argued that MEA's board of directors' delegated authority to Heckman to run the day-to-day affairs of the corporation. This delegation granted Heckman the authority to transfer TA # 668 and designate the Update Policy beneficiary. Moreover, she argued, that a corporate president has the power, incident to his office, to conduct the affairs of the corporation. Therefore, Margaret Heckman concluded that the transfers were validly executed and could not be avoided.

The Court agrees with the Trustee that a valid resolution of MEA's board of directors' was required before Heckman could transfer TA # 668 and designate the Update Policy beneficiary. Missouri law requires transactions between a corporation and corporate insiders to be approved by the board of directors. See V.A.M.S. § 351.327. The statute provides three possible methods for an interested transaction to be approved. Disinterested directors can approve the transaction in good faith after full disclosure, V.A.M.S. § 351.327(1)(1); disinterested

shareholders can approve the transaction in good faith after full disclosure, V.A.M.S. § 351.327(1)(2); or the transaction was fair as to the corporation at the time it was approved by a committee or the board, V.A.M.S. § 351.327(1)(3). All other transactions in which an officer or director has a financial interest are void or voidable by the corporation. *See* V.A.M.S. § 351.327(1).

Heckman and Margaret Heckman were officers and directors of MEA. They had a financial interest in the transfer of TA # 668, the designation of the Update Policy beneficiary, and the transfer of equipment to R.H. Engineering. No board meeting was convened to approve the transfers. Therefore, a majority of disinterested directors did not approve the transactions in good faith after disclosure. Maxfield was not contacted to approve the transaction as a shareholder. Therefore, a majority of disinterested shareholders did not approve the transactions in good faith after full disclosure. The transfers were for minimal or no consideration. Therefore, the transactions were not fair as to the corporation. Consequently, the requirements of § 351.327 have not been met, and the transactions are void.

■ Margaret Heckman argued that the board never questioned Heckman's day-to-day management of MEA's affairs, and by its inaction delegated authority to Heckman. The board, in effect, acquiesced to Heckman's exercise of authority. In support of this position, she cites *Molasky Enter., Inc. v. Carps, Inc.,* 615 S.W.2d 83 (Mo.App.1981). Other provisions of Missouri corporate law can be modified by a resolution of the board, the corporate charter or the bylaws, *see, e.g.,* V.A.M.S. § 351.330 ("if the bylaws so provide" a corporation may appoint a committee of two directors); V.A.M.S. § 351.335 ("Unless otherwise provided in the articles of incorporation or bylaws" meetings may occur by telephone); V.A.M.S. § 351.325 (a majority of the board is a quorum "unless a greater number is required by the articles of incorporation or the bylaws"). Section 351.327 does not contain any language indicating that its

requirements can be waived. Moreover, the purpose of the provision is to protect the corporation from insider self-dealing. This purpose would be eviscerated by interpreting the acquiescence theory to abrogate § 351.-327 requirements. The Court refuses to enforce such a tortured reading of Missouri law. Thus, even if MEA's board of directors delegated broad powers to Heckman, the board could not, through express provision or acquiescence, delegate the authority to self-deal.

■ As to TA # 668, a second independent reason justifies the conclusion that a board resolution was a necessary prerequisite. Transamerica would not authorize the transfer of policy ownership from a corporation to a corporate officer without a certified copy of a valid board resolution. Heckman provided a resolution, but no board meeting occurred and no resolution was, in fact, approved. Margaret Heckman's signature on the resolution was also a forgery. The terms of the insurance contract required a valid resolution as a necessary condition to transfer; that condition precedent was not met. Therefore, the transfer of ownership is void by the terms of the insurance contract.

### B. Source of Funds

■ Margaret Heckman also argued that Heckman was the true owner of TA # 668 and its predecessor CML # 524 despite the recorded ownership. She offered two theories. She first offered a mistake theory. However, the Trustee objected to this offer because Margaret Heckman never pled mistake as an affirmative defense. See Fed. R.Bankr.P. 7008, 7009. The Court sustained the objection at trial. Failure to plead mistake waived the defense, and the Court will not consider its merits.[1] The second theory offered by Margaret Heckman was a source of funds theory. The evidence demonstrated that Heckman made some premium payments on TA # 668 from his personal account. Thus argued Margaret Heckman, Heckman was the record owner of the policy

---

1. The Court would also note that the only evidence of mistake, also objected to by the Trustee, was the testimony of Van Geer. Van Geer was not a credible witness. Thus, even if the defense of mistake was allowed, the evidence would not support it.

and the equitable owner based on his payment of the premiums.

■ The Court rejects this source of funds argument because the evidence demonstrated a commingling of MEA funds with Heckman's law office account and personal account. He freely transferred funds between the three accounts to pay bills when they came due. The particular account used to pay an obligation is not determinative of the insurance ownership issue.

## C. Jurisdiction

■ Margaret Heckman raised one last defense in this action. This argument was offered for the first time in her post-trial brief. She argued that Maxfield, a 45% shareholder, had insufficient corporate authority to file the bankruptcy petition. *See In re Runaway II, Inc.,* 159 B.R. 537 (Bankr. W.D.Mo.1993). This deficiency, argued Margaret Heckman, robs the Court of jurisdiction to hear the main case as well as this adversary proceeding. The argument is one of subject matter jurisdiction. The Court recognizes that lack of subject matter jurisdiction is a defense that may be raised at any time, including on appeal, and may not be waived. *Insurance Corp. of Ireland v. Compagnie Des Bauxites De Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2103, 72 L.Ed.2d 492 (1982); *Yeldell v. Tutt,* 913 F.2d 533, 537 (8th Cir.1990); Fed.R.Civ.P. 12(h)(3).

■ Whether Maxfield had the authority to file a bankruptcy petition is a question of state corporate law. On July 23, 1990, MEA forfeited its corporate charter. *See* V.A.M.S. § 351.525 (1986), repealed by L.1991, H.B. No. 219, § A, effective May 29, 1991. A corporation's officers and directors at the time of forfeiture become its statutory

trustees charged with winding up corporate affairs. V.A.M.S. § 351.525(6). The statutory trustees' authority to liquidate the corporation may be delegated to a third party. *See Turner v. Browne,* 173 S.W.2d 868, 875–76 (Mo.1943). In *Turner,* one of three statutory trustees of a forfeited corporation transferred all the corporation's assets to a liquidating trustee. *Id.* at 871. The other two statutory trustees had full knowledge of the transfer, but challenged the transfer when the liquidating trustee attempted to enforce the trust agreement. *Id.* at 871–72. The Missouri Supreme Court upheld the transfer for two reasons. First, the authority delegated to the liquidating trustee was for the purposes of carrying out the statutory "wind up" provision, and two, the statutory trustees, with knowledge of the transfer, did nothing to challenge the transfer until the transfer appeared adverse to their interests. By their inaction, they acquiesced and consented to the transfer. *Id.* at 875–76; *see also Exchange Nat'l Bank v. Wolken,* 819 S.W.2d 45, 47 (Mo.1991) (en banc) (summary judgment inappropriate where trier of fact could find that statutory trustees acquiesced to single trustee's grant of a security interest in corporate property to a bank).

■ MEA's statutory trustees were Maxfield and Margaret Heckman.[2] Maxfield filed MEA's Chapter 7 petition on October 23, 1992. In an attached affidavit, Maxfield stated that differences with Margaret Heckman prevented them from fulfilling their statutory duties. Maxfield stated that a neutral trustee was necessary to liquidate the estate and pay the debts. Margaret Heckman made no objection to the filing of the petition. She raised the lack of corporate authority for the first time in her post-trial

---

**2.** Roland Heckman was also a statutory trustee on the date of forfeiture. Upon his death, his interest passed to his estate. Margaret Heckman is the executrix of both his Missouri and Kansas probate estates, and she acts as a statutory trustee both in her individual capacity and in her representative capacity. The evidence does not indicate whether Roberta Bowman, Maxfield's girlfriend at the time of incorporation, was formally removed from her position. However, official corporate records filed with the State of Missouri no longer list her as a director. Since Roberta Bowman was not a director of record at

the time of forfeiture, the Court will not consider her a statutory trustee in this matter. Should Roberta Bowman assert any rights or claims against the bankruptcy estate, the Court reserves the right to determine whether she was or was not a director of the corporation. This issue does not affect the Court's holding on the jurisdictional issue because Roberta Bowman's lack of involvement with the corporation and the bankruptcy case would also give rise to the acquiescence and consent issues and conclusions reached here today.

brief filed on March 14, 1994. Margaret Heckman's silence for more than a year amounts to acquiescence and consent within the meaning of *Turner*. Also, the filing of bankruptcy and the appointment of a bankruptcy trustee furthers the purposes of the statute as the appointment of a liquidating trustee did in *Turner*. Therefore, based on state law, Maxfield had the authority as a statutory trustee to file the bankruptcy petition. Since the petition was lawfully filed, the Court has proper subject matter jurisdiction.

### D. Remedy

The Trustee has requested that the Court impose a constructive trust on the policy proceeds. A constructive trust is a method by which a court exercises its equitable powers to:

> remedy a situation where a party has been wrongfully deprived of some right, title or interest in property as a result of fraud or in violation of confidence or faith reposed in another.

*Fix v. Fix*, 847 S.W.2d 762, 765 (Mo.1993) (en banc). To establish a constructive trust at state law, a party must generally show: (1) unjust enrichment, usually by mistake, fraud or breach of a fiduciary duty, *see* Restatement of Restitution §§ 163, 166–67, and 190 (1937); (2) a trust res, identifiable property to which the trust may attach, *see* Restatement § 163c; and (3) the property must be traceable to the unjust enrichment, *see* Restatement § 215.

Either actual or constructive fraud is sufficient to justify the imposition of a constructive trust. *Fix v. Fix*, 847 S.W.2d at 765. The breach of a fiduciary duty constitutes constructive fraud for constructive trust purposes. *See Swon v. Huddleston*, 282 S.W.2d 18 (Mo.1955). With regard to corporations:

> It is the uniform rule that a director or officer of a corporation occupies fiduciary relation to the corporation and its shareholders.

*Bayne v. Jenkins*, 593 S.W.2d 519, 523 (Mo. 1980) (en banc). Self-dealing is a classic example of an officer or directors' breach of fiduciary duty to a corporation. *See, e.g.*

*Gieselmann v. Stegeman*, 443 S.W.2d 127 (Mo.1969).

The requirements of a constructive trust are met on these facts. Heckman was an officer of the corporation, and consequently, a fiduciary. Heckman's transfer of ownership of TA # 668 and the designation of the Update Policy beneficiary constituted self-dealing. This breached his fiduciary duty, constituting constructive fraud for constructive trust purposes. Thus, the first requirement of a constructive trust has been met. Moreover, an identifiable res exists to which a constructive trust can attach, namely the policy proceeds. The second element of a constructive trust is met. Thirdly, the policy proceeds may be directly traced to Heckman's self-dealing, satisfying the final constructive trust requirement.

A constructive trust may be imposed even though the property is in the hands of an innocent third party. The Missouri Supreme Court stated:

> property obtained by one through the fraudulent practices of a third person will be held under a constructive trust for the person defrauded, though the person receiving the benefit is innocent of collusion. If such person accepts the property, he adopts the means by which it was procured; or, as Lord Ch. Justice Wilmot said, "Let the hand receiving the gift be ever so chaste, yet if it comes through a polluted channel, the obligation of restitution will follow it."

*White v. Mulvania*, 575 S.W.2d 184, 189–90 (Mo.1979) (en banc).

Margaret Heckman did not participate in the self-dealing perpetrated by her husband; however, equity demands that she disgorge the wrongfully acquired proceeds. She was not a bona fide purchaser, but succeeded to the proceeds through her husband. She gained no additional rights thereby. Therefore, a constructive trust should be imposed.

### Conclusion

Based on the foregoing discussion, the Court finds that the transfer of ownership of

TA # 668 and the change of TA # 668–s beneficiary were executed by Roland Heckman without corporate authorization, and the transfer is void. MEA is the owner and beneficiary of TA # 668. The Court further finds that the designation of Margaret Heckman as the Update Policy beneficiary was done without corporate authority and is void. MEA is the owner and beneficiary of the Update Policy. It is hereby ORDERED that a constructive trust shall attach to the policy proceeds from TA # 668 and the Update Policy. Margaret Heckman is hereby ORDERED to turnover all policy proceeds from TA # 668 and the Update Policy to the Trustee. Such turnover shall include interest accrued on the policies prior to their payment by the insurance companies which was paid to Margaret Heckman. It is further ADJUDGED that MEA is the beneficial owner of certain equipment in the possession of Scott Kessler, and MEA is entitled to any proceeds from the sale of said equipment.

This Memorandum Opinion constitutes Findings of Facts and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

SO ORDERED.