**In re PALACE OF MYSTERY, INC., Debtor.**

**Fred Charles Moon, Trustee in Bankruptcy Plaintiff,**

**v.**

**Kirby Robinson Van Burch, Defendant.**

**Bankruptcy No. 99–60068–ABF.**
**Adversary No. 99–6041–ABF.**

United States Bankruptcy Court,
W.D. Missouri,
Southern Division.

Nov. 30, 1999.

Fred Charles Moon, Springfield, MO, for plaintiff.

Gary A. Love, Ozark, MO, for defendant.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

This is an action by a bankruptcy trustee to recover certain property, or the value thereof, from the owner of the debtor. The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b). This is a core proceeding, under 28 U.S.C. § 157(b)(2). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Federal Rules of Civil Procedure as made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### ISSUE PRESENTED

Plaintiff Fred Charles Moon is the trustee in bankruptcy of Palace of Mystery, Inc. (Palace). Defendant Kirby Robinson Van Burch is the sole shareholder and director of Palace. During the less than one year in which it was in business, Palace leased space in Branson, Missouri for the purpose of providing a venue for Van Burch's magic show. Palace paid for the creation and modification of certain props and illusions during that period of time. Palace also advanced sums to purchase furniture for Van Burch's personal condominium, and to pay certain tax obligations incurred by him. The Performance Agreement (the Palace Agreement) between Palace and Van Burch provides that Palace will not claim an interest in Van Burch's props and illusions upon expiration of the agreement. It also provides that Palace will purchase furniture and furnishings for Van Burch's condominium. Van Burch prepared and executed the Palace Agreement without specific approval of the Board of Directors. Under Missouri law in effect as of the date of the Palace Agreement, a contract between a corporation and one of its directors is only valid if it is authorized in good faith, and if it is fair to the corporation at the time of the contract. Is the Palace Agreement valid?

### DECISION

The Palace Agreement does not meet the test for validity under Missouri law. It was not formally approved by the board of directors, it was not executed in good faith, and it was not fair to the corporation. Therefore, Palace, and not Van Burch, owns the props and illusions it created or modified.

### FACTUAL BACKGROUND

Kirby Van Burch has been a magician for more than 30 years, and he has performed in places such as Las Vegas, Germany, Malaysia, and Thailand. Immediately prior to creating Palace, he performed for approximately three years at the Magical Mansion, a theater in Branson, Missouri. While employed at Magical Mansion, Van Burch operated pursuant to a contract which he and his production company, Beyond Belief Productions, Inc. (Beyond Belief), had exe-

cuted with Magical Mansion and its owners. That agreement provided that Van Burch would be paid the sum of $35,000.00 per week for a ten month season. Out of those funds he was responsible for paying the cost of putting on the production, including the salary of the stage performers.

Also pursuant to the Magical Mansion agreement, both Magical Mansion and Van Burch contributed funds to a separate "Improvement Fund" for the purpose of improving Van Burch's show through new illusions, equipment, and stage sets.[1] While at Magical Mansion, Van Burch used that Improvement Fund to revise a number of his props, and to purchase new props, including a disappearing helicopter. Van Burch brought these and other items with him from Magical Mansion, including a mummy case, a gated entryway, a bird cage, and a curio cabinet. In addition, while working at Magical Mansion, Van Burch acquired a fish tank built to look like a Harry Houdini water torture cell. The Improvement Fund also paid for the fish tank.[2]

In late 1997, Van Burch had a falling out with the owners of Magical Mansion. As a result, he left to develop his own magic show in his own theater. He, therefore, created Palace, which eventually assumed the obligations of Beyond Belief. Palace was incorporated on or about January 29, 1998, and Van Burch is the sole shareholder and the only member of the Board of Directors. At that time, Palace entered into a lease for the use of a theater owned by an entity known as Thirty-five, L.L.C. Thereafter, Palace incurred debt and expended funds in order to create new props and illusions, and to rework other props and illusions for the new stage. The items

either built or rebuilt with Palace funds include the following:

1. Lion's Bride Illusion;
2. Mirror Table for Genie Lamp Illusion;
3. Genie Lamp Illusion;
4. Sword and Stone Illusion;
5. Oleo roll-up curtains;
6. Three-sided rolling wall on rollers;
7. Six heavy-duty metal tables;
8. Metal storage shelves in the animal compound building; and
9. Two prop tables.

With the exception of the curtains, a fabricator named Leon Rummage built these items, at least in part. Mr. Rummage charged Palace a total of $15,817.00 for his work.[3]

In addition to the items which Mr. Rummage created or modified for Palace, there are a number of other items that Lex Pearson created or modified for Palace. Pearson was employed by Palace as an Illusion Master. The evidence offered by Pearson demonstrates that Palace reimbursed him for the following expenses in connection with those props and illusions:

1. Helicopter—$664.52.[4]
2. Oleo Curtains—$712.37 [5]
3. Sword and Stone—$779.00 [6]
4. Other curtain expenses—$1,674.06 [7]

The total of all these expenses is $3,829.95.

In sum, the evidence demonstrates that Palace spent or incurred debt in a total amount of $19,646,95 to either build new props and illusions, or to modify props and illusions contributed to Palace by Van Burch or his other companies.

On February 6, 1998, Van Burch drew up the Palace Agreement.[8] He modeled

---

1. Van Burch Ex. # 1, at 14.

2. Van Burch Ex. # 5A.

3. Trustee Exs. 11–14.

4. Trustee Ex. # 17.

5. Trustee Ex. # 16.

6. Trustee Ex. # 15.

7. Trustee Exs. # 18 and # 19.

8. Van Burch Ex. # 2.

the Palace Agreement after the agreement that he and Beyond Belief had entered into with the owners of Magical Mansion. The Palace Agreement is, however, different from the Magical Mansion Agreement in a number of significant respects. To begin with, rather than a base salary of $35,000.00 per week, with Van Burch and Beyond Belief being responsible for production expenses, the Palace agreement simply provides that Van Burch is to be paid $2,000.00 per week. Unlike the prior agreement, Van Burch is not obligated to pay the cost of stage performers and other production expenses. Instead, those expenses are to be borne by Palace. Unlike the prior agreement, there is no provision for an "Improvement Fund" to be created with contributions of money from the owner and Van Burch. Instead, all expenses of creating or modifying props and illusions are to be borne by Palace. And, unlike the Magical Mansion agreement, the Palace agreement contains a specific provision, entitled "Artist's Equipment", which read as follows:

> The parties agree that all "Artist's Equipment" either currently utilized by artists or acquired subsequent to the execution of this Agreement are the sole property of Artist and/or any party designated by Artist.[9]

The Palace Agreement defines "Artist's Equipment" to mean "all illusions, special effects, music, sets, costumes, tools, rigging, pyrotechnics equipment, animals, animal cages, animal equipment, lights and all props, magical or otherwise used in and/or for the benefit of the Kirby Van Burch Show".[10] In addition, the Palace Agreement provides that Palace is to pay all transportation costs for Van Burch to move all props and equipment from Bran-

son to another destination at the expiration of the Agreement.[11]

The trustee seeks to recover all of the props and illusions built or modified by Palace.

Apart from his props and illusions, the Palace Agreement also provides that Palace is to provide Van Burch with living quarters, and to spend up to $50,000.00 to purchase furniture and furnishings for the living quarters. Furthermore, the furniture and furnishings are to be the sole property of Van Burch.[12] Palace, in fact, spent a total of $10,514.67 on furniture.[13] The trustee seeks to recover Palace's expenditures for that furniture.

Finally, the trustee seeks to recover the sum of $6,997.50, which is the amount of money Palace spent to pay Van Burch's personal tax obligations.[14] There is nothing in the Palace Agreement that authorizes Palace to pay Van Burch's tax liabilities.

## DISCUSSION

■ Van Burch contends that the props and illusions, as well as the furniture and taxes, all of which were paid for by Palace, were owed to him as part of his compensation pursuant to the Palace Agreement. The first problem with this argument is that neither the corporation nor Van Burch treated these expenditures by Palace as items of compensation to him.

> The bylaws of Palace provide as follows: Section 10. Compensation. The Board of Directors, by the affirmative vote of a majority of directors then in office, and irrespective of any personal interest of any of its members, shall have authority to establish reasonable compensation of all directors for services to the corpora-

9. Van Burch Ex. # 2, at 4.

10. Van Burch Ex. # 2, at 1.

11. Van Burch Ex. # 2, at 8.

12. Van Burch Ex. # 2, at 7.

13. Trustee Exs. # 7 and # 8 as well as the following pages of Trustee Ex. 18 relating to condominium expenses, per testimony of Lex Pearson: 3, 4, 5, 6, 10, 11, 12, 13, 14, 15 and 21.

14. Trustee Exs. # 19 and # 20.

tion as directors, officers or otherwise. By resolution of the Board of Directors the directors may be paid their expenses, if any, of attendance of each meeting of the board.[15]

There is no corporate resolution authorizing either the Palace Agreement, or any of these specific expenditures as compensation to Van Burch. Indeed, the W–2 prepared by Palace and issued to Van Burch for 1998 reflects income of $12,500.00, representing the salary actually paid to him, but not the value of props and illusions created for his benefit, furniture purchased for his condominium, or prior tax liabilities paid on his behalf.[16] There is no evidence that Van Burch himself treated these as items of income on his 1998 income tax return. Since neither Palace nor Van Burch treated these expenditures by Palace as items of compensation, Van Burch's argument must fail.

■ Furthermore, Missouri law requires a Board of Directors resolution for transactions between a corporation and its insiders.[17] These transactions are only valid if they are authorized by the board in good faith, and if they are fair to the corporation.[18] The version of section 351.327 of Missouri's Revised Statutes in effect on February 6, 1998, the date of the Palace Agreement reads as follows:

1. No contract or transaction between a corporation and one or more of its directors or officers, or between a corporation and any other corporation, partnership, association, or other organization in which one or more of its directors or officers are directors or officers, or have a financial interest, shall be void or voidable solely for this reason, or solely because the director or officer is present at or participates in the meeting of the board or committee thereof which authorizes the contract or transaction, or solely because of his or their votes are counted for such purpose, if:

(1) The material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors or committee, and the board of directors or committee in good faith authorizes the contract or transaction by the affirmative votes of the majority of the disinterested directors, even though the disinterested directors be less than a quorum; or

(2) The material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon, and the contract or transaction is specifically approved in good faith by vote of the shareholders; or

(3) The contract or transaction is fair as to the corporation as of the time it is authorized or approved by the board of directors, a committee thereof, or the shareholders.[19]

■ I find that Van Burch did not act in good faith when he executed an agreement with Palace that transferred Palace property to himself with no benefit to Pal-

---

**15.** Trustee Ex. # 3, By–Laws of Palace of Mystery, Inc.

**16.** Trustee Ex. # 5.

**17.** *Barnes v. Heckman (In re Material Engineering Assoc. Ltd.),* 168 B.R. 204 (Bankr. W.D.Mo.1994).

**18.** Mo.Stat.Ann. § 351.327.1 (1991).

**19.** *Id.* The statute was amended by the 1998 Missouri Legislature to add the following provisions as paragraphs 3 and 4:

3. Unless otherwise provided in the articles of incorporation or the bylaws, the setting of compensation of directors for services in any capacity by the board of directors pursuant to Section 351.310 shall not be deemed to involve a conflict of interest.

4. The intent of this Section is not only to provide against the voiding or voidability of a contract or transaction, but rather to set forth as well the substantive law on the methods by which a conflict transactions may be regularized to become an arms-length transaction.

L.Mo.1998, vii; effective August 28, 1998.

ace. I also find that the Palace Agreement was not fair to the corporation, and it did not provide for reasonable compensation as provided by the corporation's bylaws. And, there is no corporate document purporting to authorize Van Burch to use corporate assets to pay his personal tax liability. The evidence shows that Van Burch started Palace in January 1998 with virtually no capital contribution, other than the props and illusions he transferred from Magical Mansion. Those props and illusions had been purchased by Beyond Belief and Spot Productions, another corporation owned by Van Burch. After its formation, he caused Palace to assume the liabilities of Beyond Belief, and, ultimately, he completed a defacto merger of Beyond Belief into Palace. As a result, Palace incurred debts and expended funds on behalf of Beyond Belief with no benefit to itself. After Palace was in business for approximately six months, and while insolvent, it paid Van Burch's personal tax liabilities. Thereafter, Palace incurred expenses to furnish Van Burch's condominium. No benefit to the corporation flowed from these expenditures. On January 19, 1999, less than a year after Van Burch incorporated Palace, he filed a Chapter 11 bankruptcy petition on its behalf. At the time of filing, Palace scheduled debts totaling $539,684.58, including unpaid payroll and sales taxes of $131,652.19.[20] On that same day, Van Burch entered into a new agreement[21] with Thirty–Five, L.L.C., the owner of the building leased by Palace. This new agreement provided for Van Burch to perform a magic show in the building using props and illusions paid for by Palace. Palace, however, would receive no benefit from this latest agreement. Van Burch was given a $20,000.00 advance upon signing the new agreement. Not surprisingly, Van Burch has created yet another corporation, Illusion Management, Inc., to manage his affairs and to

own his props and illusions. If Van Burch is allowed to disappear into yet another corporation, Palace and its creditors will receive no benefit whatsoever for expenditures that would solely benefit Van Burch. Given that Van Burch began Palace with virtually no operating capital, that the corporation assumed obligations of another entity controlled by him, and that the books and records of the company did not properly authorize these expenditures, I find that the expenditures at issue here were not made in good faith, were not fair to the corporation, and were not reasonable compensation to Van Burch. Therefore, under Missouri law, the Palace Agreement is void and unenforceable.

The final issue concerns the appropriate remedy. Section 542 of the Bankruptcy Code[22] provides that an entity "in possession, custody, or control ... of property [of the estate] ... shall deliver to the trustee, and account for, such property or the value of such property."[23] The question here concerns the value of the property. Obviously, as to the tax payments, Van Burch owes the trustee the sum of $6,992.50, the total paid by Palace. As to the furniture, there was no testimony as to the value other than the cost, which was a total of $10,514.67. Van Burch has the option of delivering either the furniture, or that sum to the trustee. Finally, as to the props and illusions, Mr. Rummage testified that the Oleo curtains would cost $12,000.00 to replace. Van Burch testified that Sword and Stone had a value of $2,000.00. As to Lion's Bride and the Mirror Table, Van Burch estimated a total value of $2,000.00, and Lex Pearson, a former employee, estimated a value of $9,000.00 to $10,000.00. The evidence shows Palace expended a total of $19,646.95 in building or modifying props and illusions. I find that that figure repre-

---

**20.** Trustee Ex. # 1(C).

**21.** Van Burch Ex. # 3.

**22.** 11 U.S.C. § 542(a).

**23.** *Id.*

sents the value of the props and illusions for purposes of Section 542.

Based on the above and foregoing, judgment will be entered against Van Burch as follows:

(1) in the amount of $6,997.50 representing the tax debts paid; and

(2) for return of either the following items, or $10,514.67:

  (A) 1 Thomasville Table, Stock # 35695–734; and

  (B) 4 Thomasville Chairs, Stock # 35695–882; and

  (C) 1 Bernhardt Leather Sleigh Bed, Stock # 34–435L; and

  (D) 1 Restonic Avante Removable P.T. Stock # 5/O; and

(3) for return of either the following items, or $19,646.95:

  (A) Lion's Bride Illusion;

  (B) Mirror Table for Genie Lamp Illusion;

  (C) Genie Lamp Illusion;

  (D) Sword and Stone Illusion;

  (E) Oleo roll-up curtains;

  (F) Three-sided rolling wall on rollers;

  (G) Six heavy-duty metal tables;

  (H) Metal storage shelves in the animal compound building; and

  (I) Two prop tables.

Execution on this judgment will be stayed for 30 days to give Van Burch the option to tender either the funds or the property. Upon expiration of the 30-day period following entry of judgment, the trustee may recover either the property, or its value, from Van Burch.

An Order in accordance with this Memorandum Opinion will be entered this date.